**Lola McELYA, Plaintiff,**

v.

**STERLING MEDICAL, INC., Dr. Jay S. Cox, M.D., and the United States of America, Defendants.**

**Nos. 87–2652–TuB, 89–2024–TuB.**

United States District Court, W.D. Tennessee, W.D.

Jan. 17, 1990.

---

J. Houston Gordon, Covington, Tenn., for plaintiff.

Robert Williams, Asst. U.S. Atty., Memphis, Tenn., Lt. Com. Byard Clemmons, U.S. Navy, Judge Advocate General's Corps, for U.S.

Nathan A. Bicks, Memphis, Tenn., for defendants Sterling Medical and Dr. Cox.

## MEMORANDUM AND ORDER

AARON BROWN, Jr., United States Magistrate.

These are consolidated medical malpractice suits arising out of the death of plaintiff's decedent, Thomas McElya, who died of cancer following certain treatment at the Naval Air Station, Memphis. The actions allege that Dr. Jay S. Cox and Sterling Medical were negligent in their care and treatment of Mr. McElya in that they failed to properly x-ray, test, and diagnose the cancerous condition that ultimately resulted in his death. Case No. 87–2652–TuB was filed against Sterling Medical and Dr. Cox. After an administrative claim was denied by the navy the plaintiff brought Case No. 89–2024–TuB against Sterling Medical, Dr. Cox, and the United States. The suit against the United States was brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.* There is a dispute as to whether Dr. Cox and Sterling Medical were employees of the United States or whether they were independent contractors. The United States takes the position that they were independent contractors.

In the summer of 1989 counsel for plaintiff undertook to begin discovery in these cases. In conversations with the Assistant United States Attorney representing the United States counsel for plaintiff was advised that discovery in this litigation would be controlled by Instruction 5820.8 of the Secretary of the Navy ("SECNAVINST 5820.8") A copy of that regulation was forwarded by Lt. Gina C. Higgins of the navy Judge Advocate General's Corps to counsel for the plaintiff. Lt. Higgins's letter transmitting Instruction 5820.8 informed counsel for plaintiff that court appearances, depositions, and any release of information would be regulated by Instruction 5820.8 and Department of Defense Directive 5405.2, which is set out at 32 CFR 97. This directive contains much of the same material as Instruction 5820.8, although Instruction 5820.8 is much more elaborate. The letter from Lt. Higgins said that "[a]ny requests to interview, depose or obtain the testimony of any present or former Department of the Navy personnel regarding factual matters, must be forwarded to the appropriate navy officer exercising general court-martial jurisdiction over the individual." The letter stated that Directive 5405.2 and Instruction 5820.8 applied to civilian contractors and their employees as well as to other navy personnel. The letter warned plaintiff's attorney that criminal penalties were available to enforce compliance with the regulations.

Instruction 5820.8 comprises some 45 pages. It imposes severe limitations on the disclosure of any information by Department of the Navy personnel and is clearly intended to, among other things, restrict dissemination of information sought pursuant to proper notice and process under the Federal Rules of Civil Procedure. Under a section titled "Authority to Determine and Respond" the instruction refers to litigation in which the United States is a party and specifically refers to actions under the Federal Tort Claims Act. The regulation provides that, in deciding whether to authorize testimony, the "determining authority" shall consider, among other things, "[w]hether attendance of the requested witness at deposition or trial will unduly interfere with the military mission of the command." The instruction states that "[w]henever compliance of a court order or subpoena *duces tecum* for production of

DON [Department of the Navy] records is denied for any reason," the subpoena shall be forwarded through certain channels.

Under a section titled "Response to Requests or Demands In Conflict With This Instruction" the instruction states that no personnel or former personnel or civilian employee shall "produce, disclose, release, comment upon, or testify concerning any official DOD information without prior written approval of the appropriate DON official designated ..." That section goes on to state that, upon receipt of a litigation demand (presumably including a subpoena or order to produce) the court, or other requester, will be furnished with a copy of the instruction and informed that "a request or demand is being reviewed, ..." A stay of the demand is to be sought pending a final determination by the Department of the Navy. If a court declines to stay the effect of a subpoena or order, the "DAJAE of the Associate General Counsel (litigation) having cognizance over the matter" will be notified and he or she, after consultation with the Department of Justice, "will determine whether the individual is required to comply with the request or demand and will notify the requester, the court, or other authority accordingly."

In order to comply with Instruction 5820.8 a person seeking information, including a litigant, must make a written request setting out nineteen things including "a brief summary of the case facts and present posture of the case," and "[a] statement of understanding that the United States reserves the right to be present at any interview or deposition."

In order to expedite matters, counsel for plaintiff made a request on August 14, 1989 to take the depositions of "present and former navy personnel and/or employees and/or independent contractors including, but not limited to, the depositions of Sterling Medical, Inc., Dr. J.S. Cox and/or any of their employees along with the deposition testimony of the doctors, physicians, radiologists, technicians, nurses and other personnel involved in the care and treatment of Thomas H. McElya during the period from May of 1986 until the time of his death." Mr. Houston Gordon, plaintiff's attorney, agreed in his request that counsel for the United States would be notified at least seven days in advance of any interviews, depositions or testimony and that all depositions would be at the location of the witness unless agreed otherwise. A proper notice was then given to take the discovery deposition of the defendant, Dr. Jay S. Cox, at his office in Annapolis, Maryland on September 7, 1989.

The response to Mr. Gordon's request came in a letter of September 6, 1989 from Mr. M.D. Hannas, Deputy Director, Claims and Tort Litigation Division of the Department of the Navy. He stated that a proper request had not been made under Instruction 5820.8 and noted that the request for a deposition of Dr. Cox sought opinion and expert testimony. Mr. Hannas noted that "the Department of the Navy does not authorize such testimony absent a showing of 'exceptional need or undue circumstances, and that the anticipated testimony will not be adverse to interest of the Department of Defense or the United States.'" Of course, testimony adverse to the interest of the United States was just what Mr. Gordon was seeking.

Mr. Hannas's letter, however, granted Mr. Gordon's request to take Dr. Cox's deposition subject to nine limitations set out in a "memorandum of conditions and limitations governing the deposition of Dr. J.S. Cox." Dr. Cox was not to testify "regarding any opinion formulated after the fact, including, but not limited to, the issue of causation." He could not be asked "to state, form, or adopt any opinion based upon matters submitted to him either after the event in question, or at the deposition." He could not be asked to "state any current opinion." The memorandum stated that "[b]oth you [Mr. Gordon] and Dr. Cox should be advised that Dr. Cox's testimony may constitute a violation of the Ethics in Government Act, 18 U.S.C. § 207, were he to be questioned beyond the scope of this authorization, assume the role of expert witness, or accept expert witness fees for any of his testimony." The memorandum stated that the "grant of authority" carried

with it permission to conduct reasonable predeposition interviews but that the United States reserved the right to attend such interviews. Mr. Gordon called off Dr. Cox's deposition and filed the current motion for a protective order.

It is the position of the plaintiff that the United States has waived sovereign immunity by enacting the Federal Tort Claims Act and that discovery in all suits under that act, including this one, should proceed in accordance with the Federal Rules of Civil Procedure without any additional restrictions imposed by navy regulations. It is clear that Instruction 5820.8, if applied to this case, would superimpose substantial limitations on the discovery rules of the Federal Rules of Civil Procedure. The United States maintains, on the other hand, that Instruction 5820.8 can be validly applied to this litigation and that the plaintiff should only obtain discovery through compliance with that regulation.

The navy maintains that its authority for requiring compliance with Instruction 5820.8 comes from 5 U.S.C. § 301 and the Supreme Court case of *Touhy v. Ragen,* 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951).

5 U.S.C. § 301, known as a general "housekeeping" statute, states the following:

> The head of an executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. This section does not authorize withholding information from the public or limiting the availability of records to the public.

*Touhy v. Ragen,* above, was a habeas corpus suit brought by a state inmate against his warden. The petitioner, in an effort to prove that his conviction was brought about by fraud, subpoenaed the Agent in Charge of the Federal Bureau of Investigation in Chicago to produce certain records. Pursuant to a regulation of the Attorney General the Agent in Charge re-

fused to produce the subpoenaed records, and was held in contempt. The majority opinion by Justice Reed pointed out that the court found it unnecessary to consider "the ultimate reach of the authority of the Attorney General to refuse to produce at a court's order the government papers in his possession" (340 U.S. at 467, 71 S.Ct. at 419), since the case raised no question as to the power of the Attorney General himself to make such a refusal. The court determined that the Attorney General had the authority to withdraw from his subordinates the authority to produce documents. The court emphasized "the usefulness, indeed the necessity, of centralized determination as to whether subpoenas *duces tecum* will be willingly obeyed or challenged ..." 340 U.S. at 468, 71 S.Ct. at 419. The majority opinion, as well as the concurring opinion of Justice Frankfurter, made it clear that the court was not deciding the authority of the Attorney General himself to refuse to produce government papers under his charge.

It is doubtful, therefore, that *Touhy v. Ragen* is authority in this case for the proposition that the Secretary of the Navy has the right, himself, to promulgate regulations restricting the release of documents sought pursuant to the Federal Rules of Civil Procedure and, himself, restrict access by litigants in Federal Tort Claims Act cases to navy employees and former employees. In any event, Section 301 (formerly 5 U.S.C. § 22) is different today from the statute before the court in *Touhy v. Ragen.* The last sentence stating that this statute "does not authorize withholding information from the public or limiting the availability of records to the public" was added in 1958. Professor Wigmore discusses this question as follows:

> Until 1958, a federal statute stated that "The head of each department is authorized to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use, and preservation of the records, papers, and property appertaining to it."

This was called the "housekeeping statute." Typical regulations based on this statute—particularly on the last clause—directed subordinate officials with custody of government documents not to produce them even on order of court and provided that the head of the department would either grant or deny the demand for production when application was made to him.

The validity of these regulations was upheld repeatedly *not* on the ground that the regulations enacted a privilege for official information but rather on the ground that, in furtherance of the good housekeeping envisaged by the statute, they reasonably relegated to the *head* of the department concerned the question whether privilege would be claimed. The regulations in *this* respect, then, had the force of law. To the extent, however, that the department head, relying on the housekeeping statute, purported by his regulation either to enlarge privilege for official information or to assume to himself the right to make the final decision as to whether a privilege applied, the regulation was of doubtful validity. Any question in the present regard left open by the above quoted statute and consequent regulations was put to rest in 1958 when Congress added the sentence, "This section does not authorize withholding information from the public or limiting the availability of records to the public."

8 *Wigmore on Evidence* (McNauhton rev. 1951), § 2378.

■ The Department of the Navy by its regulations at issue here is, in effect, attempting to assert a privilege not recognized by the Federal Rules of Civil Procedure or the law of evidence, that is, a privilege of the Secretary of Navy to decide what, how, and when evidence is made available to an adverse litigant or a court in a Federal Tort Claims Act proceeding.

The Federal Rules of Civil Procedure are applicable to suits against the United States under the Federal Tort Claims Act. *United States v. Reynolds*, 345 U.S. 1, at 6, 73 S.Ct. 528, at 531, 97 L.Ed. 727 (1953).

Rule 26 of the Federal Rules of Civil Procedure compels production of relevant material that is "not privileged." In *Reynolds* the court made it clear that "the term 'not privileged' as used in Rule 34, refers to 'privileges' as that term is understood in the law of evidence." 345 U.S. at 6, 73 S.Ct. at 531.

The United States may, of course, assert a legitimate evidentiary privilege, such as a privilege concerning state or military secrets, as the court held in *Reynolds*. That does not mean, however, that an agency head has the authority to create a general privilege that anyone under his current or former jurisdiction shall decline to produce evidence to an adverse litigant or court unless the agency head decides that it should be produced. 5 U.S.C. § 301 does not give an agency head such authority. As the court said in *NLRB v. Capitol Fish Company*, 294 F.2d 868 (5th Cir.1961),

> 5 U.S.C.A. § 22 [now § 301] cannot be construed to establish authority in the executive departments to determine whether certain papers and records are privileged. Its function is to furnish the departments with housekeeping authority. It cannot bar a judicial determination of the question of privilege or a demand for the production of evidence found not privileged.

294 F.2d at 875.

■ This is a medical malpractice action involving a former employee or a contract physician of the navy. There has been no suggestion that any of the discovery that the navy is attempting to restrict Mr. Gordon's access to enjoy any evidentiary privilege. There is certainly no privilege with respect to Dr. Cox giving an expert opinion. It should be pointed out that we are not dealing here with a situation where one of two litigants, neither of whom are, or have been, connected with the navy, is seeking to compel the expert opinion of a navy employee.

Through its Instruction 5820.8 the navy has also attempted to place limitations on the ability of counsel for plaintiff and counsel for the other parties to properly prepare their cases by telling them not to under-

take to talk with witnesses connected with the navy who might have knowledge about this case, on penalty of being criminally prosecuted. The ability to at least attempt to interview witnesses is an important component of a party's litigation preparation. Counsel should not be so limited. Ethical obligations will necessarily place certain limitations on counsel's attempts to interview witnesses, and the navy's ability to give instructions to its current personnel concerning voluntarily talking with adverse counsel is still intact.

In sum, I conclude that discovery in this case should proceed solely pursuant to the Federal Rules of Civil Procedure without the application of Instruction 5820.8 or other regulations.[1]

IT IS SO ORDERED.

---

1. No further instruction to the capable and honorable lawyers representing the United States should be necessary.