UNITED STATES of America ex
rel. Brett ROBY, Plaintiff,

v.

THE BOEING COMPANY, Defendant.

No. C–1–95–375.

United States District Court,
S.D. Ohio,
Western Division.

Dec. 1, 1999.

Michael F. Hertz, Alan E. Kleinburd, Dennis L. Phillips, Alicia J. Bentley, Sara Winslow, Michael S. Child, U.S. Department of Justice, Washington, DC, for plaintiffs.

Jerome Charles Randolph, Keating, Muething & Klekamp—1, Cincinnati, OH, Curtrice M. White, Todd W. Rosencrans, Steve Y. Koh, Steven S. Bell, Mark H. Lough, Gary DiBiance, Perkins Coie, Seattle, WA, Mitchell S. Ettinger, Bonnie J. Austin, Martin T. Moe, Skadden, Arps, Slate, Meagher & Flom, Edward J. Meehan, Raina E. Burbaker, Jennifer L. Spaziano, Skadden Arps Slate Meagher & Flom, Gary DiBianco, Sskadden Arps Slate Meagher & Flom, Washington, DC, for defendants.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Defendant's Motion for a Protective Order Prohibiting Interference by the United States of America with Defendant's Expert Witness, R. Edward Palmer (doc. 505); the Government's Response (doc. 524); and Defendant's Reply (doc. 532).

## BACKGROUND

On August 2, 1999, Defendant Boeing Company (hereinafter, "Boeing" or "Defendant") filed a Motion for a Protective Order Prohibiting Interference by the United States of America with Boeing's Expert Witness, R. Edward Palmer (hereinafter, "Motion for a Protective Order") (doc. 505). Shortly thereafter, Plaintiff United States of America (hereinafter, "the Government") filed its Response (doc. 524), and Defendant followed with its Reply (doc. 532).

In its Amended Complaint, the Government alleges that Defendant breached its

contractual obligation to comply with MIL–Q–9858A (doc. 34). MIL–Q–9858A (hereinafter, "the standard" or "the MIL standard") is a governmental quality control standard that establishes the prerequisites for a quality control program to be designed by prime contractors such as Boeing (doc. 505). The standard does not list particular specifications or requirements, but rather confers discretion upon a contractor to determine how to implement a system of quality control measures that complies with the policies embodied in the MIL standard (*Id.*). The Amended Complaint alleges that Boeing's quality control system was not "adequate" or "properly control[led]" (doc. 34). The Government contends that this lack of quality control by Boeing contributed to the loss of the Government's helicopters and the subsequent filing of a civil suit under the False Claims Act (*Id.*).[1]

In order to respond to the allegations in the Amended Complaint, Defendant submits that it retained an expert witness, R. Edward Palmer, to help in its defense (doc. 505). Mr. Palmer is the former Director of Quality Assurance (District South) for the Defense Logistics Agency (hereinafter, "the DLA"), which is the agency within Department of Defense (hereinafter, "the DOD") that is responsible for overseeing the prime contractors's quality control programs and procedures (*Id.*). Mr. Palmer was employed by the DOD from 1954 until his retirement in 1993 (doc. 524).

In addition, Defendant states in its Motion for a Protective Order (doc. 505), that it has worked with Mr. Palmer for approximately one year and intends to rely upon his expert testimony regarding:

(1) The quality control requirements imposed by the government on prime contractors like Boeing;

(2) The government's expectations of prime contractors in terms of the steps they should take, and the process they should have in place, to monitor the quality of the manufacturing of components provided by subcontractors . . .; and

(3) His opinion that Boeing's quality system and practices at the relevant times met or exceeded the applicable government requirements.

(doc. 505, Ex. 3).

Pursuant to the Court's Preliminary Pretrial Order (doc. 108), Defendant contends that it notified the Government on October 1, 1998, that it would call Mr. Palmer as an expert witness and Defendant also described Mr. Palmer's expected testimony (*Id.*). However, on February 22, 1999, the Government wrote a letter to Defendant asserting that, pursuant to the DOD's *Touhy* regulations,[2] Defendant was required to obtain permission from the DLA's Office of General Counsel before being allowed to present any testimony by Mr. Palmer (doc. 505, Ex. 4).

Nonetheless, on May 19, 1999, Defendant notified the DLA that Defendant believed it did not need governmental permission to use Mr. Palmer's in its defense, and, that it intended to present expert testimony by Mr. Palmer at trial (doc. *Id.*, Ex. 5). Defendant contends that the DOD has "no authority to withhold information in civil litigation or to prohibit former government employees from testifying as experts in litigation with the [Government]" (doc. 505).

On July 9, 1999, the DLA responded that, according to the *Touhy* regulations, Defendant must demonstrate exceptional need or unique circumstances before Defendant may use a former DOD employee as an expert witness in this litigation (*Id.*, Ex. 7). The DLA letter also avers that the regulations do not require a special showing of need when DOD personnel testify for the Government or a party represented by the Department of Justice (*Id.*).

Pursuant to the Federal Rules of Civil Procedure 26 and 27, and Southern District

---

1. See *United States ex rel. Roby v. Boeing*, 73 F.Supp.2d 897, 898 (S.D.Ohio 1999).

2. See *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468, 71 S.Ct. 416, 95 L.Ed. 417 (1951).

The *Touhy* holding was promulgated into an administrative regulation and was subsequently codified at Title 32 of the Code of Federal Regulations (hereinafter, "C.F.R.") § 97.6(e) (1999).

of Ohio Local Rule 37.2, Defendant alleges that this Motion for a Protective Order is needed in order to allow Mr. Palmer to testify on behalf of Defendant as an expert witness on quality control issues (doc. 505). In contrast, the Government states that the DOD is "complying with a provision of its 'Touhy' regulations which generally prohibits DOD employees from using the knowledge gained in their DOD employment to testify as expert witnesses against the United States, unless a two-pronged showing is made of 'exceptional need or unique circumstances and that the anticipated testimony will not be adverse to the interests of the [DOD] or the United States'" (doc. 524). See 32 C.F.R. § 97.6(e). Defendant replies that the Government's position is "directly contrary to law, and violates the principle of fundamental fairness," and, thus, Defendant's Motion for a Protective Order should be granted (doc. 532).

For the reasons stated below, Defendant's Motion for a Protective Order (doc. 505) is hereby GRANTED.

## DISCUSSION

### A. THE TOUHY REGULATIONS

The *Touhy* regulations, codified at Title 32 C.F.R. § 97, *et seq.*, (1999) take their name from the Supreme Court case of *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951). In *Touhy*, the Supreme Court reaffirmed the authority of federal agencies to regulate the use and disclosure of their records and information. *Id.* at 468, 71 S.Ct. 416. The DOD promulgated the regulations at issue in 1985 in order to set forth the procedures governing testimony by DOD's current and former employees. *See* 32 C.F.R. § 97.1. (1999). The regulations state, in pertinent part, that:

> DOD personnel shall not provide, with or without compensation, opinion or expert testimony concerning official DOD information, subjects, or activities, except on behalf of the United States or a party represented by the United States or a party represented by the Department of Justice. Upon a showing by the requestor of exceptional need or unique circum-

stances and that the anticipated testimony will not be adverse to the interests of the [DOD] or the United States, the appropriate DOD official designated in § 97.6(a) may, in writing, grant special authorization for DOD personnel to appear and testify at no expense to the United States....

32 C.F.R. § 97.6(e) (1999); *see also* 32 C.F.R. § 97.3(b) (1999) (defining "DOD personnel" as including present and former civilian employees of any Component of the [DOD]). These regulations were promulgated pursuant to the DOD's statutory authority found at Title 5 U.S.C. § 301 and Title 10 U.S.C. § 113, and would be applicable to former civilian employees, such as Mr. Palmer. Section 113 sets out the authorities and responsibilities of the Secretary of Defense, while § 301 is also known as a general "housekeeping statute." *See McElya v. Sterling Medical, Inc.*, 129 F.R.D. 510, 513 (W.D.Tenn. 1990). The housekeeping statute is designed to permit an executive agency to manage its internal affairs, including its procedures for releasing official information. However, the statute explicitly prohibits an executive agency from invoking the statute in order to withhold information. The statute provides, in pertinent part, that:

> [t]he head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use and preservation of its records, papers, and property. *This section does not authorize withholding information from the public or limiting the availability of records to the public.*

5 U.S.C. § 301 (emphasis added).

The Supreme Court case of *Touhy* was a *habeas corpus* action brought by a state inmate against his warden. *Id.,* 340 U.S. at 463, 71 S.Ct. 416. The petitioner, in an effort to prove that his conviction was brought about by fraud, subpoenaed the Agent–in–Charge of the Federal Bureau of Investigation in Chicago to produce certain governmental records. *Touhy*, 340 U.S. at 464–65, 71 S.Ct. 416. Pursuant to a regulation of the Attorney General's Office, the Agent–in–

Charge refused to produce the subpoenaed records and was subsequently held in contempt by the trial court. *Id.* at 465, 71 S.Ct. 416. The majority opinion written by Justice Reed pointed out that the Court found it unnecessary to consider "the ultimate reach of the authority of the Attorney General to refuse to produce at a court's order the government papers in his possession," especially since the case raised no question as to the power of the Attorney General himself to make such a refusal. *Id.* at 467, 71 S.Ct. 416. The Court determined that the Attorney General had the authority to withdraw from his subordinates the authority to produce the documents at issue. *Id.* at 468, 71 S.Ct. 416. The Court emphasized "the usefulness, indeed the necessity, of centralized determination as to whether subpoenas *duces tecum* will be willingly obeyed or challenged is obvious." *Id.* The majority opinion, as well as the concurring opinion of Justice Frankfurter, makes it clear that the court was not deciding the authority of the Attorney General himself to refuse to produce the government papers under his charge. *Id.* at 472, 71 S.Ct. 416.

## B. *THE PARTIES' ARGUMENTS*

In its Motion for a Protective Order (doc. 505), Defendant asserts that the DOD has no authority to use the *Touhy* regulations to withhold evidence in litigation pending before a federal court. Defendant argues that the *Touhy* regulations, in conjunction with the "housekeeping statute of 5 U.S.C. § 301," were designed with the "narrow purpose of permitting an executive agency to manage its affairs, including the release of official information from the agency when an employee is served with a subpoena or received a request for information in connection with litigation" (*Id.*). In addition, Defendant contends that the *Touhy* regulations explicitly presume that access to such information will be granted. According to Defendant, the regulations only direct that certain procedures are to be followed so that the DOD can have the opportunity to assess whether national security concerns should prevent disclosure.

Furthermore, Defendant argues that the DOD has no authority to promulgate *Touhy* regulations that limit expert testimony by current or former employees in federal court. Defendant asserts that an executive agency has no authority to use the *Touhy* regulations to modify or abrogate a court's control over litigation. Moreover, Defendant states that, "5 U.S.C. § 301, the statute which provides authority to the DOD to promulgate its *Touhy* regulations, may not be used to withhold information" from the public or limit the availability of records to the public (doc. 505).

Defendant alleges that the Government's attempt to prevent Defendant's expert from testifying is inexcusable for several reasons. First, Defendant argues that the Government has no legal basis for this strategic legal maneuver since no federal court has permitted an executive agency to utilize the *Touhy* regulations to withhold expert testimony by current or former employees in litigation. Second, Defendant asserts that fundamental fairness dictates that Defendant must be permitted to rebut the Government's allegations of Defendant's "inadequate quality control by presenting the best experts in the field to testify regarding the Government's expectations of prime contractors and Defendant's conformance to those expectations" (doc. 505). Third, even if the Government did have the authority to promulgate the *Touhy* regulations and apply it to prevent Mr. Palmer's testimony, then Defendant contends it has "established exceptional need or unique circumstance [in order to allow] Mr. Palmer's testimony" in this litigation (*Id.*).

In its Response, the Government alleges that "Boeing's Motion is not a proper discovery motion, but instead seeks to have this Court invalidate a federal regulation" (doc. 524). The Government frames its arguments and the issues before the Court as follows:

> The only real issue in Boeing's motion is whether this portion of the [*Touhy*] regulations is valid as applied to Mr. Palmer. If the Court finds it valid, then Mr. Palmer cannot testify against the Government as Boeing's paid witness, and there will be no need for any party to take his deposition. If the Court were to agree with Boeing that this portion of DOD's regulations should be invalidated so that Mr. Palmer

can testify as Boeing's paid expert, then there similarly would be no discovery dispute. Boeing would be permitted to call Mr. Palmer as an expert witness at trial, and Boeing certainly would have no objection to his deposition by Plaintiffs. (doc. 524).

The Government also argues that the DOD is not withholding information from Defendant, but simply regulating the conduct of its former employee, Mr. Palmer, "who became subject to 32 C.F.R. § 97.6(e) by virtue of DOD employment" (doc. 524). Moreover, the Government alleges that, "Boeing has not cited, and the Government has not found, any case holding that a Government agency cannot properly prohibit its employee from using knowledge gained in his Government employment to testify as a paid expert witness against the United States in a lawsuit where he has no personal knowledge of the facts" (*Id.*). In addition, the Government contends that Mr. Palmer's expert testimony should be excluded because Boeing has failed to make the showing of "exceptional need, unique circumstances, and non-prejudicial testimony" as required by 32 C.F.R. § 97.6(e). The Government further argues that Defendant's Motion is premature because Defendant has failed to first comply with DOD's administrative processes before asking this Court for relief. Therefore, the Government urges this Court to order Defendant to first go through the DOD's administrative procedures in order to establish "a showing of need" before this Court makes a ruling on Defendant's "premature motion" (*Id.*).

Nevertheless, after reviewing this matter, the Court finds Defendant's arguments to be persuasive. Accordingly, for the reasons stated below, Defendant's Motion for a Protective Order (doc. 505) is hereby GRANTED.

## C. *THE COURT'S ANALYSIS*

■ Essentially, this Court must examine the extent to which an agency regulation may curb the power of the Court to compel discovery under the Federal Rules of Civil Procedure. Three district courts in the Sixth Circuit have considered similar discovery questions under the Ethics in Government Act, and each court has ruled against a governmental agency's attempt to restrict the district court's discovery powers under the Federal Rules of Civil Procedure. *See Dean v. Veterans Admin. Reg. Office*, 151 F.R.D. 83, 87 (N.D.Ohio 1993) ("This Court declines to allow an employee ethics regulation to curb its own discovery power under Rules 30 and 34."); *In re Air Crash Disaster at Detroit Metro. Airport*, 737 F.Supp. 399, 405 (E.D.Mich.1989) (refusing to allow the criminal ethics statute to preclude the testimony of expert witnesses); *McElya*, 129 F.R.D. at 514 ("There is certainly no privilege with respect to [the navy doctor] giving an expert opinion."). This Court also finds guidance in the concurring opinion of Chief Judge Merritt in the case of *In re Bankers Trust Co.*, which presented issues similar to this case to the Sixth Circuit. In his concurring opinion, Judge Merritt stated, in pertinent part:

> If Congress were to limit a federal district judge's authority to order discovery according to the interest of the Federal Reserve, the ability of a federal court to perform its most basic function of deciding "cases and controversies" under Article III of the Constitution would be notably impaired. Courts cannot fairly decide cases if they cannot have access to the information needed for a fair and objective decision. Even when National Security is at stake, federal courts still review documents to determine whether disclosure is warranted.

61 F.3d 465, 472–73 (6th Cir.1995). This Court finds that the same rationale holds true for expert and factual testimony as it does for documentary evidence for several reasons.

■ First, the Federal Rules of Civil Procedure have been held to have the force and effect of a statute. *See Sibbach v. Wilson & Co.*, 312 U.S. 1, 13, 61 S.Ct. 422, 85 L.Ed. 479 (1941); *see also* Title 28 U.S.C. § 2072(b) (1999) ("All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect."). Federal regulations should be adhered to and given full force and effect of law whenever possible. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–44,

104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). As long as the federal agency's regulation is based upon a permissible construction of the enabling statute, the regulation should be enforced. *Id.* The statutory authority upon which the Government relies in this case, however, simply does not give it the power to promulgate regulations in direct contravention with the Federal Rules of Civil Procedure. The last sentence of 5 U.S.C. § 301 states that this statute "does not authorize withholding information from the public or limiting the availability of records to the public" and was added in 1958, well after *Touhy v. Ragen* was decided. *See McElya,* 129 F.R.D. at 514. The Court finds that the Federal Rules of Civil Procedure cannot be trumped by departmental regulations that place arbitrary limits on this Court's discovery powers.

Second, the Government relies upon 5 U.S.C. § 301, which provides that the DOD may prescribe regulations "for the conduct of its employees, the distribution and performance of its business, and the custody, use and preservation of its records, papers, and property." Section 301, though, is nothing more than a general housekeeping statute and does not provide "substantive" rules regulating disclosure of governmental information. *See Exxon Shipping Co. v. United States Dep't of Interior,* 34 F.3d 774, 776 (9th Cir.1994) (concluding that nothing in the text of § 301 empowers a federal agency to withhold documents or testimony from federal courts). According to the Sixth Circuit, "to allow a federal regulation issued by an agency to effectively override the application of the Federal Rules of Civil Procedure, and, in essence, divest a court of jurisdiction over discovery, the enabling statute must be more specific than a general grant of authority as found here." *See In re Bankers Trust Co.,* 61 F.3d at 470; *see also Resolution Trust Corp. v. Deloitte & Touche,* 145 F.R.D. 108, 111 (D.Colo.1992) (holding that the Federal Rules of Civil Procedure cannot be abrogated by agency regulations); *Merchants Nat'l Bank & Trust Co. of Fargo v. United States,* 41 F.R.D. 266, 268 (D.N.D.1966) ("While the statute gives the Secretary the right to restrict disclosures, judicial control over the evidence cannot be abdicated to the caprice of executive officers.").

Third, it is well established that the Government, as a litigant, is bound by the rules of discovery to the same extent as any other litigant. *See United States v. Procter & Gamble Co.,* 356 U.S. 677, 681, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958). Thus, fundamental fairness dictates that the *Touhy* regulations should not apply where the Government is a party to the litigation. *Sperandeo v. Milk Drivers & Dairy Employees Local Union No. 537,* 334 F.2d 381, 384 (10th Cir.1964) (holding that federal agencies are bound by discovery rules in the same manner as any other litigant).

Fourth, Rule 26 of the Federal Rules of Civil Procedure compels production of relevant material that is "not privileged." *McElya,* 129 F.R.D. at 514. The Government may, of course, assert a legitimate evidentiary privilege, such as a privilege concerning state or military secrets, as the Supreme Court so held in *United States v. Reynolds,* 345 U.S. 1, 9–10, 73 S.Ct. 528, 97 L.Ed. 727 (1953) ("Judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers."). As the court in *McElya* explained, "that does not mean, however, that an agency head has the authority to create a general privilege that anyone under his current or former jurisdiction shall decline to produce evidence to an adverse litigant or court unless the agency head decides that it should be produced." *Id.,* 129 F.R.D. at 514. Section 301 does not give an agency head such authority. The Government is not claiming that privileged information, national security secrets, or DOD's confidential materials will be disclosed if Mr. Palmer is allowed to testify.

Furthermore, the Government has not identified any objectionable information about which Mr. Palmer may testify except in regards to his alleged "paid expert testimony" on behalf of Defendant. Neither Party contends that if Mr. Palmer is allowed to testify, his testimony will be presented as, or mistaken for, the Government's official position in this action. The Government, like Defendant, will also be allowed to present its position through its own factual and expert

witnesses, even if those witnesses contradict the expected testimony of Mr. Palmer. This Court will consider the issue of any privileged, confidential, or secret testimony of Mr. Palmer if and when that issue is presented by either Party in a proper written or oral motion submitted at a later time before this Court.

Finally, the Court notes that the Government cites to the holding of *Touhy* as a means of buttressing its position that Defendant must obtain the DOD's or DLA's permission before Mr. Palmer is allowed to testify for Defendant (*see* 524). However, *Touhy* does not support such a broad reading as the Government seeks. The *Touhy* Court specifically refused to reach the question of an agency executive's power to withhold evidence from a court without a specific claim of privilege. *Id.* at 472–473, 71 S.Ct. 416. No such claim of privilege or national security concerns have been asserted by the Government in its Response. Rather, The Court agrees with the Fifth Circuit's finding in *NLRB v. Capitol Fish Co.*, 294 F.2d 868, 875 (5th Cir.1961), that:

> 5 U.S.C.A. § 22 [now § 301] cannot be construed to establish authority in the executive departments to determine whether certain papers and records are privileged. Its function is to furnish the departments with housekeeping authority. It cannot bar a judicial determination of the question of privilege or a demand for the production of evidence found not privileged. . . .

294 F.2d at 875. This Court finds that the same holds true for factual and expert testimony. In addition, we find no compelling reason to discard the relatively straightforward discovery methods outlined in the Federal Rules of Civil Procedure simply because the Government has attempted to mandate a different procedure. *See In re Bankers Trust,* 61 F.3d at 470.

Accordingly, we find Defendant's Motion for a Protective Order to be well-taken and in the interest of fundamental fairness and accountability.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendant's Motion for a Pro-

tective Order (doc. 505). Accordingly, the Government is barred from asserting the DOD's *Touhy* regulations, Title 32 C.F.R. § 97.1, *et seq.*, as a means to prevent Defendant from calling Mr. Palmer as an expert witness in this action.

SO ORDERED.