**Arshad CHOWDHURY, Plaintiff,**

v.

**NORTHWEST AIRLINES CORPORATION, et al., Defendants.**

No. C 02–02665 CRB.

United States District Court, N.D. California.

April 2, 2004.

 

Christy E. Lopez, Kelli M. Evans, Meera Trehan, Reed N. Colfax, Relman & Associates, Washington, DC, Douglas E. Dexter, Christine G. Esperanza, David J. Lazerwitz, Jessica Koren Nall, Farella Braun & Martel LLP, Jayashri Srikantiah, Alan L. Schlosser, San Francisco, CA, for Plaintiff.

Jude Alfred Cisneros, Stephen Craig Kenney, Donald B. MacDougall, Kenney & Barkowitz LLP, San Francisco, CA, Sandra M. Schraibman, Carolyn Anne McKee, U.S. Department of Justice Civil Division, Washington, DC, for Defendants.

## MEMORANDUM AND ORDER

BREYER, District Judge.

Plaintiff claims that in October 2001 Northwest Airlines refused to permit him to board a Northwest flight because of his race and national origin. He now moves for an "attorneys' eyes only" protective order permitting the discovery of information the United States Transportation Security Administration has designated as "sensitive security information."

### BACKGROUND

Defendant Northwest Airlines ("Northwest") has withheld certain documents from discovery on the ground that they contain "sensitive security information" which Transportation Security Administration ("TSA") regulations prohibit them from disclosing. It has also refused to answer certain interrogatories on the same ground. At the deposition of one of Northwest's employees, Northwest refused to allow the employee to answer certain (apparently almost 70) questions on the ground that the answers contain sensitive security information which Northwest is prohibited from disclosing.

Northwest submitted the documents and responses to interrogatories which allegedly contain sensitive security information to the TSA for review. The TSA has reviewed the documents and interrogatory responses and redacted the information the TSA believes constitutes sensitive security information. On August 23, 2003, it issued a "Final Order" designating certain documents sought by plaintiff as sensitive security information not subject to disclosure in the litigation. It has since issued two more Final Orders withholding additional information. The TSA has also provided unredacted copies of all of the withheld documents to the Court for *in camera* review.

Plaintiff now moves for an "attorneys' eyes only" protective order. He argues that the TSA regulations do not, as a matter of law, divest this Court of its traditional Federal Rules of Civil Procedure authority to oversee discovery and order the production of purported sensitive security information pursuant to an appropriate protective order.

## DISCUSSION

TSA regulations define "sensitive security information" as, among other things, "[a]ny approved, accepted, or standard security program ... and any comments, instructions, or implementing guidance pertaining thereto," as well as "[a]ny selection criteria used in any security screening process, including for persons, baggage, or cargo." 49 C.F.R. § 1520.7(a) & (c).

The regulations further provide that air carriers, among others, "must restrict disclosure of access to sensitive security information ... to persons with a need to know and must refer requests by other persons for such information to TSA or the applicable DOT administration." 49 C.F.R. § 1520.5(a). As for who is a person with "a need to know," the regulations provide that "[f]or some specific sensitive security information, the Administrator may make a finding that only specific persons or classes of persons have a need to know. Otherwise, a person has a need to know sensitive security information in" certain identified situations, including when the person needs the information to carry out security duties or be trained in such duties, or to supervise people carrying out such duties. *Id.* § 1520.5(b), § 1520.5(b)(1), (2), & (3). The regulations do not include a "civil litigant" or "his attorney" as a person with a "need to know."

Plaintiff argues that these regulations are silent as to discovery in civil litigation, and, in any event, the regulations do not and cannot trump the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 26 (General Provisions Governing Discovery; Duty of Disclosure); Fed. R.Civ.P. 34 (Production of Documents and Things); Fed.R.Civ.P. 37 (Failure to Make Disclosure or Cooperate in Discovery; Sanctions).

### A. An Evidentiary Privilege

██ "Federal Rule of Civil Procedure 26(b)(1) provides for access to all information 'relevant to the subject matter involved in the pending action' unless the information is privileged. If a privilege exists, information may be withheld, *even if it is relevant to the lawsuit and essential to the establishment of plaintiff's claim.*" *Baldrige v. Shapiro,* 455 U.S. 345, 360, 102 S.Ct. 1103, 71 L.Ed.2d 199 (1982) (emphasis added). The question, then, is whether the TSA regulations create a valid privilege as to sensitive security information. The answer to that question depends on whether the regulations are "based upon a permissible construction of the enabling statute." *In re Bankers Trust Co.,* 61 F.3d 465, 469 (6th Cir.1995) (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

The regulations at issue here are enabled by 49 U.S.C. section 114(s). Section 114(s) provides in relevant part:

(s) **Nondisclosure of security activities.—**

(1) **In general.**—Notwithstanding section 552 of title 5 [FOIA], the Under Secretary [of the TSA] shall prescribe regulations prohibiting the disclosure of information obtained or developed in carrying out security ... if the Under Secretary decides that disclosing the information would—

(A) be an unwarranted invasion of personal privacy;

(B) reveal a trade secret or privileged or confidential commercial or financial information; or

(C) be detrimental to the security of transportation.

(2) **Availability of information to Congress.**—Paragraph (1) of this subsection does not authorize information to be withheld from a committee of Congress authorized to have the information.

Section 114(s) was adopted in November 2002 as part of the Homeland Security Act of 2002. *See* PL–107–296, § 1601(b).[1]

██ This statute commands the TSA to adopt regulations prohibiting disclosure of

---

1. Section 114(s) is nearly identical to 49 U.S.C. section 40119, entitled "Security and research development activities." Section 40119, adopted in 1990, directs the Secretary of Transportation, rather than the TSA Under Secretary, to "pre-scribe regulations prohibiting disclosure of information obtained or developed in ensuring security ... if the Secretary of Transportation decides disclosing the information would— (C) be detrimental to transportation safety."

information which would be "detrimental to the security of transportation" if disclosed. 49 U.S.C. § 114(s). The statute does not make an exception for civil litigation. Thus, on its face, the statute authorizes the TSA to prescribe regulations prohibiting disclosure in civil litigation when the TSA determines that disclosure would be detrimental to the security of transportation. *See Xi v. United States I.N.S.*, 298 F.3d 832, 836 (9th Cir.2002) ("It is a venerable principle of statutory interpretation 'that where the Legislature makes a plain provision, without making any exception, the courts can make none.'") (citation omitted).

The statute does in fact make one exception: Congress provided that the statute does not authorize the TSA to withhold information from certain congressional committees. That Congress explicitly provided an exception to the TSA's authority with respect to Congress suggests that it gave the TSA the authority to withhold information from everyone else, including civil litigants and their attorneys.

The United States Supreme Court's decision in *Baldrige v. Shapiro*, 455 U.S. 345, 102 S.Ct. 1103, 71 L.Ed.2d 199 (1982) is instructive. The Court addressed whether certain information utilized by the Bureau of the Census was exempt from disclosure either by way of a Freedom Of Information Act ("FOIA") request or civil discovery. Section 8(b) of the Census Act provides that "the Secretary [of Commerce] may furnish copies of tabulations and other statistical materials which do not disclose the information reported by, or on behalf of, any particular respondent ..." 13 U.S.C. § 8(b). Section 9(a) provides:

Neither the Secretary, nor any other officer or employee of the Department of Commerce or bureau or agency thereof, may, except as provided in section 8 of this title—

(1) use the information furnished under the provisions of this title for any purpose other than the statistical purposes for which it is supplied; or

(2) make any publication whereby the data furnished by any particular establishment

or individual under this title can be identified; or

(3) permit anyone other than the sworn officers and employees of the Department or bureau or agency thereof to examine the individual reports.

13 U.S.C. § 9(a). The Supreme Court held that these statutes "explicitly provide for the nondisclosure of certain census data. No discretion is provided to the Bureau on whether or not to disclose the information referred to in [those statutes]." *Id.* at 355, 102 S.Ct. 1103. While recognizing that a statute "granting a privilege [from disclosure] is to be strictly construed so as 'to avoid a construction that would suppress otherwise competent evidence,'" the Court concluded that sections 8(b) and 9(a) "embody explicit congressional intent to preclude *all* disclosure of raw census data reported by or on behalf of individuals." *Id.* at 361, 102 S.Ct. 1103. The Court explained: "This strong policy of non-disclosure indicates that Congress intended the confidentiality provisions to constitute a 'privilege' within the meaning of the Federal Rules. Disclosure by way of civil discovery would undermine the very purpose of confidentiality contemplated by Congress." *Id.; see also Weil v. The Long Island Savings Bank*, 195 F.Supp.2d 383, 388–89 (E.D.N.Y.2001) (holding that statute authorized Treasury regulations prohibiting the disclosure of certain reports, even in civil litigation).

Section 114(s) similarly embodies explicit congressional intent to preclude all disclosure of information which the TSA Under Secretary determines would be detrimental to transportation safety if disclosed. The statute does not provide the Under Secretary with any discretion to disclose the information if he believes disclosure would be detrimental to the security of transportation.

That the statute does not specifically mention prohibiting disclosure in civil litigation does not mean that the TSA does not have the authority to do so. The Census Act at issue in *Baldrige* did not specifically prohibit disclosure in civil litigation. 455 U.S. at 355, 102 S.Ct. 1103. The Supreme Court nonetheless held that the Act did prohibit such disclosure because the statute specifically

stated that no one could review or use the census material (except as otherwise provided). Section 114(s) similarly directs the TSA to adopt regulations prohibiting disclosure if the TSA believes disclosure would be detrimental to air safety.

Plaintiff attempts to distinguish *Baldrige* on the ground that the legislative history suggested that Congress intended to prohibit disclosure in all contexts, including civil litigation. None of that legislative history, however, referred to civil litigation. Rather, the Court simply noted that the legislative history "makes clear that Congress was concerned" with more than simply protecting the identity of individuals. In other words, the *Baldrige* court cited the legislative history to support its construction of the scope of the privilege, not to support the existence of the privilege itself. 455 U.S. at 356, 102 S.Ct. 1103. The *Baldrige* Court's determination that the Census Act created an evidentiary privilege was based on the plain language of the statute. Similarly, here, the plain language of section 114(s) directs the TSA to prohibit all disclosures that the TSA determines are detrimental to air safety. The only exception is for congressional committees.

Plaintiff also argues that the statute in *Baldrige* did not provide any discretion as to what information shall not be disclosed, whereas here Congress has delegated to the TSA the determination of what information would be detrimental to the safety of air transportation if disclosed. Plaintiff does not identify any principled reason, however, to hold that Congress may create an evidentiary privilege if it determines in advance precisely what information is privileged but cannot do so if it delegates the task of identifying precisely what information is privileged to an expert federal agency. Sensitive security information, by its very nature, cannot be precisely identified in advance. Moreover, as the evidence in this case demonstrates, what is sensitive security information, that is, what information would be detrimental to air transportation if disclosed, changes with the circumstances.

█ The phrase "notwithstanding the FOIA" at the beginning of section 114(s)

does not mean that the regulations prohibiting disclosure apply only to FOIA requests. In *Public Citizen, Inc. v. Federal Aviation Administration*, 988 F.2d 186 (D.C.Cir.1993), the court considered the predecessor to sections 40119 and 114(s), 49 U.S.C. section 1357(d)(2). Section 1357(d)(2) empowered the Federal Aviation Administration ("FAA") to withhold information "[n]otwithstanding section 552 of Title 5 relating to freedom of information." The petitioners argued that this phrase meant that Congress did not intend section 1357(d)(2) to shield information from disclosure under any statute other than FOIA. *Id.* at 194.

The D.C. Circuit disagreed. It concluded "unmistakably that Congress intended to allow the FAA to withhold from public disclosure information falling within § 1357(d)(2), whether or not FOIA is invoked." *Id.* at 195. The court based its holding on the plain language of the statute and the legislative history, and, in particular, on the fact that while Congress was considering section 1357(d)(2), the D.C. Circuit held that the FAA's general statutory authority to withhold information where the public interest so requires was not specific enough to come within FOIA Exemption 3. *Id.* Other lower courts had issued similar opinions. Congress subsequently enacted section 1357(d)(2), but only after adding the "notwithstanding FOIA" language. *Id.* The D.C. Circuit concluded that it had "little doubt that Congress added the 'notwithstanding' clause to overrule those lower court cases." *Id.* The court noted:

> Although Congress might have clarified the "notwithstanding" clause by changing the wording to "notwithstanding any other provision of law," our role is not to grade Congress on its draftsmanship, but rather to give effect to the intention of Congress, insofar as we can unmistakenly discern it.... Where disclosure of information specified in § 1357(d)(2) ... would jeopardize passenger safety, Congress clearly intended for the FAA to be able to withhold such information under § 1357(d)(2).... Therefore, we hold that § 1357(d)(2) allows the FAA to withhold security-sensitive information from mem-

bers of the public, *regardless of the legal basis for the request for the information.* *Id.* at 195–96 (emphasis added).

Plaintiff claims that *Public Citizen* addresses disclosure to the public, and not disclosure pursuant to an "attorneys' eyes only" protective order. Section 114(s), however, make no such distinction. Section 114(s) mandates nondisclosure if the TSA believes that disclosure would be detrimental to air transportation safety. The TSA has made the determination that disclosure of certain information, even subject to a protective order, would be detrimental. Stephen J. McHale, Deputy Administrator of the Transportation Security Administration, explains that prior to September 11, 2001, the FAA's Office of Civil Aviation Security at times disclosed sensitive security information in civil litigation subject to strict protective orders and courtroom seals. After September 11, however, the TSA determined that no disclosure is appropriate. McHale Decl. at ¶ 10. The TSA based its decision in part on intelligence reports that indicate that al-Qaeada operatives have—through media sources and other publicly available research—obtained access to information concerning security vulnerabilities at American airports. *Id.* at ¶ 11.

The cases cited by plaintiff all involve statutes that are easily distinguishable from the statute at issue here. In *Bankers Trust,* 61 F.3d 465 (6th Cir.1995), the plaintiff sued Bankers Trust Company for fraud and sought, through discovery, Federal Reserve examination reports of Bankers Trust. Bankers Trust argued that Federal Reserve Board regulations prohibited disclosure of the reports. *Id.* at 467. The Federal Reserve Board argued that the regulations were permissible constructions of several enabling statutes. *Id.* at 470. Most of the statutes involved "broad, general grants of authority." *Id.* For example, 12 U.S.C. section 248(I) authorized the Board "to issue regulations 'as may be necessary to enable [the Federal Reserve] to administer and carry out the purposes of this chapter and prevent evasions thereof.'" *Id.* at 470. The most specific statute cited by the Federal Reserve Board, 5 U.S.C. section 301, pro-

vides that the head of an executive department may adopt regulations "for the government of [its] department, the conduct of its employees, the distribution and performance of its business, and the custody, use and preservation of its records, papers, and property." 5 U.S.C. § 301.

The Sixth Circuit held that the Federal Reserve regulations were invalid because "[t]he statutory authorities upon which the Federal Reserve relies ... simply do not give it the power to promulgate regulations in direct contravention of the Federal Rules of Civil Procedure." *Id.* It found that section 301 was "nothing more than a general housekeeping statute and does not provide 'substantive' rules regulating disclosure of government information.'" *Id.* Moreover, Congress had amended section 301 to specifically state that it "does not authorize the withholding of information from the public or limiting the availability of records to the public." *Id.* (quoting 5 U.S.C. § 301). The court concluded that in such circumstances the regulation was "plainly inconsistent with [Federal Rule of Civil Procedure] 34 and cannot be enforced." "To allow a federal regulation issued by an agency to effectively override the application of the Federal Rules of Civil Procedure and, in essence, divest a court of jurisdiction over discovery, the enabling statute must be more specific than a general grant of authority as found here." *Id.; see also Exxon Shipping Co. v. United States Department of Interior,* 34 F.3d 774, 776–78 (9th Cir.1994) (holding that 5 U.S.C. section 301 did not authorize the Department of Interior to adopt regulations withholding information or shielding government employees from a valid subpoena); *United States v. The Boeing Co.,* 189 F.R.D. 512 (S.D.Ohio 1999) (holding that section 301 did not authorize the Defense Department to adopt regulations prohibiting its employees from serving as expert witnesses); *Merchants Bank v. Vescio,* 205 B.R. 37 (D.Vt.1997) (following *Bankers Trust* with respect to Federal Reserve Board non-disclosure regulations); *McElya v. Sterling Medical, Inc.,* 129 F.R.D. 510 (W.D.Tenn.1990) (holding that section 301 did not authorize the Secretary of the Navy to adopt regulations severely limiting civil discovery in medical malprac-

tice action brought against the Navy). In contrast to general housekeeping statute section 301, 49 U.S.C. sections 114(s) specifically directs the TSA to adopt regulations providing for the nondisclosure of certain information.

Plaintiff also notes that the Department of Transportation used to permit disclosure of sensitive security information pursuant to protective orders. *See Kalantar v. Lufthansa German Airlines,* 276 F.Supp.2d 5 n. 3 (D.D.C.2003) (discussing the prior policy). He concludes that since Congress is presumed to have been aware that the Department of Transportation was permitting disclosure subject to protective orders, the fact that Congress did not expressly prohibit disclosure subject to protective orders when it adopted section 114(s) means that Congress did not intend to give the TSA the authority to prohibit such disclosures.

Plaintiff's argument is based on a misinterpretation of the TSA's position. The TSA does not claim that section 114(s) always prohibits disclosure of certain information even under a protective order; instead, it contends that Congress directed the TSA to withhold disclosure of information if the TSA believes that disclosure would be detrimental to air transportation safety. If the TSA believed that it would not be detrimental to air safety to disclose the withheld material pursuant to an "attorneys' eyes only" protective order section 114(s) would not prohibit the TSA from adopting regulations permitting the disclosure of such information. In this case, however, the TSA has determined that disclosure would be harmful.

Moreover, the fact that the Department of Transportation no longer believes that disclosing certain information subject to strict protective orders is appropriate is not surprising. As Under Secretary McHale explained, the TSA's opinion as to what disclosure could be harmful to the safety of air transportation changed after September 11. In fact, since September 11, "no civil litigant who does not otherwise have an operational need to know SSI has been granted access" to SSI. McHale Decl. at ¶ 13.

■ Plaintiff also complains that he will not be able to prosecute his case without the withheld sensitive security *information* and that the public policy in favor of prohibiting discrimination will therefore be thwarted. As the Supreme Court stated in *Baldrige,* however, the conclusion that a statute creates an evidentiary privilege does not mean the party seeking the information does not have important reasons for doing so. "A finding of privilege, however, shields the requested information from disclosure despite the need demonstrated by the litigant." 455 U.S. at 362, 102 S.Ct. 1103.

Finally, at oral argument plaintiff repeatedly emphasized that there could be no possible harm to the safety of air transportation by disclosing relevant information to plaintiff's attorneys pursuant to a protective order. This argument, however, is simply a challenge to the TSA's determination that disclosure of certain information, even disclosure pursuant to an "attorneys' eyes only" protective order, is potentially harmful. That is not an issue for this Court to decide. Congress has expressly provided that an appeal from an order of the TSA pursuant to section 114(s) (non-disclosure of certain information) lies exclusively with the Court of Appeals. *See* 46 U.S.C. § 46110 (2004).

## B. Other Issues

Plaintiff also argues that the Court should not recognize an evidentiary privilege because to do so would create serious constitutional problems.

First, he complains that the process of having a Court of Appeals review the TSA's sensitive security information determinations while litigation is ongoing in this Court is unwieldy and would require the Court of Appeals to review the TSA's "final orders" "divorced from this Court's knowledge of the context of the two-year litigation in the instant case." He contends that the delay caused by this bifurcation process is unfair to plaintiff, who has an interest in having the lawsuit expeditiously resolved while witnesses memories are fresh. Congress, however, has determined that review of TSA non-disclosure determinations must be performed exclusively by the Court of Appeals. Plaintiff has not cited any case that suggests

the review process imposed by Congress is unconstitutional.

 Second, in reliance on the Ninth Circuit's decision in *Exxon,* plaintiff contends that finding an evidentiary privilege here would have serious separation of powers problems. In *Exxon,* the government argued that even if Congress had not specifically empowered federal agencies to conclusively determine whether government employees may testify in civil litigation, principles of sovereign immunity give agency heads such authority. 34 F.3d at 777–78. The Ninth Circuit rejected this argument and noted that the government's "broad definition" of sovereign immunity "would raise serious separation of powers questions." *Id.*

The issue here is different. The TSA claims, and the Court agrees, that Congress specifically directed the TSA to withhold from disclosure all information which the TSA believes will be detrimental to the safety of air transportation if disclosed. Plaintiff has not demonstrated that Congress's delegation of the determination of precisely what information should not be disclosed to the TSA violates separation of powers principles. In any event, the parties have not addressed whether the Court even has jurisdiction to decide such an issue.

Third, plaintiff claims that it would violate his due process rights for defendant to use non-disclosed sensitive security information to defeat plaintiff's claim. This argument is premature as Northwest has not yet moved for summary judgment and thus it is not apparent that Northwest will rely on nondisclosed sensitive security information in support of its defense. Plaintiff also claims that his due process rights are violated when he is prohibited from discovering information that could help him prove his statutory claim. The Supreme Court stated in *Baldrige,* however, that a finding of privilege "shields the requested information from disclosure *despite the need demonstrated by the litigant.*" 455 U.S. at 362, 102 S.Ct. 1103 (emphasis added). Moreover, the Court has reviewed *in camera* the information withheld from plaintiff thus far. In the Court's opinion, and based on its admittedly limited knowledge of the facts in this case, nothing in those documents supports plaintiff's claim.

## CONCLUSION

"It is well recognized that a privilege may be created by statute." *Id.* The plain language of section 114(s) creates an evidentiary privilege for information the TSA determines would be detrimental to air safety if disclosed. Accordingly, plaintiff's motion for a protective order is DENIED. The parties are ordered to meet and confer to adopt a procedure for the taking of depositions which ensures that only that information which the TSA has determined cannot be disclosed is withheld from plaintiff. If the parties need the Court's assistance with this issue, they shall notify the Court's Deputy Clerk.

**IT IS SO ORDERED.**