**In re BANKERS TRUST COMPANY,
Petitioner.**

No. 95–3199.

United States Court of Appeals,
Sixth Circuit.

Argued June 13, 1995.

Decided Aug. 3, 1995.

Daniel J. Buckley, Vorys, Sater, Seymour & Pease, Columbus, OH, Michael A. Cooper (argued), Sullivan & Cromwell, New York City, for Bankers Trust Co.

John D. Luken, Thomas S. Calder (argued), Dinsmore & Stohl, Stanley M. Chesley (argued), Waite, Schneider, Bayless & Chesley, Cincinnati, OH, for Procter & Gamble Co.

Norman R. Nelson (briefed), New York Clearing House Ass'n, New York City, for amicus curiae New York Clearing House Ass'n.

Richard Ashton (briefed), Federal Reserve Bd., Legal Div., Stephen L. Siciliano, Katherine H. Wheatley (argued), Federal Reserve System, Bd. of Governors, Washington, DC, for amicus curiae Federal Reserve System.

Before: MERRITT, Chief Judge; BROWN and MARTIN, Circuit Judges.

BROWN, J., delivered the opinion of the court, in which MARTIN, J., joined. MERRITT, C.J. (p. 472), delivered a separate concurring opinion.

BAILEY BROWN, Circuit Judge.

The petitioner, Bankers Trust Company, the defendant in a pending securities action, seeks a writ of mandamus to vacate a discovery order directing it to produce to the plaintiff, Procter and Gamble Company, certain documents which constitute or contain "confidential supervisory information" under federal regulations promulgated by the Federal Reserve System.[1] Bankers Trust contends that the discovery order is in error because: 1) Procter and Gamble Company failed to comply with the clearly applicable governing regulations of the Federal Reserve in attempting to obtain the documents from Bankers Trust, and 2) the documents are, in any event, protected by the Federal Reserve's bank examination privilege which the district court refused to consider. We grant the writ in part, vacate the discovery order, and remand the case to the district court with instructions.

---

1. Pursuant to the discovery order, the documents were to be turned over on February 24, 1995. Because it appeared that the mandamus petition would be moot in the absence of a stay, however, a panel of this court issued a temporary stay until the mandamus petition is resolved.

## I.

The Procter and Gamble Company ("P & G") sued Bankers Trust and BT Securities Corporation (collectively "Bankers Trust"), alleging fraud, misrepresentation, violations of the Commodities Exchange Act, and various other causes of action arising from two derivative contracts entered into with Bankers Trust. P & G claims approximately $195 million in damages.

The petition for writ of mandamus focuses on a single discovery issue in this litigation which is otherwise still in the discovery phase. At issue is P & G's demand that Bankers Trust produce all documents submitted to or received from the Federal Reserve, including "any and all documents relating to any and all regulatory reports of examination and inspection which relate to or refer to Bankers Trust's [leveraged derivative transaction] Business."[2] Thus, P & G is seeking Federal Reserve examination reports and documents prepared by both the Federal Reserve and Bankers Trust during the examination process. Bankers Trust contends that the documents P & G seeks are property of the Federal Reserve Board and that under the applicable Board regulations, Bankers Trust is prohibited from disclosing the documents to P & G. Bankers Trust therefore contends that it has been thrust into an untenable position. If it complies with the district court's order, it violates the Board's regulations prohibiting disclosure and risks criminal penalties. If, on the other hand, it does not comply with the court order, it is subject to being held in contempt and to possible sanctions under Rule 37 of the Federal Rules of Civil Procedure.

The relevant regulation in the instant case is 12 C.F.R. § 261 *et seq.* Section 261 first defines "confidential supervisory information" as, among other things, "reports of examination and inspection" as well as "documents prepared by, on behalf of, or for the use of the [Federal Reserve] Board, [or] a Reserve Bank. . . ." 12 C.F.R. § 261.2(b). The regulations provide that such information is and shall always remain "the property of the Board." 12 C.F.R. § 261.11(g). The regulations further provide the procedures to be followed to obtain access to confidential supervisory information. A person seeking access shall file a written request with the general counsel of the Board of Governors of the Federal Reserve System. 12 C.F.R. § 261.13(b). The general counsel may then approve the request if: 1) the person making the request has shown a substantial need for confidential supervisory information that outweighs the need to maintain confidentiality; and 2) disclosure is consistent with the supervisory and regulatory responsibilities and policies of the Board. 12 C.F.R. § 261.13(c). Making a request under this section and a denial thereof is considered to be an exhaustion of administrative remedies for discovery purposes in any civil proceeding. 12 C.F.R. § 261.13(d). If a party has exhausted such remedy to no avail, it may then file against the Federal Reserve either a Freedom of Information Act (FOIA) action or subpoena the documents under Rule 45 of the Federal Rules of Civil Procedure.[3] What a party may not do under the procedures set out in the regulations, however, is seek the documents from some other party without the Board's approval or permission. Likewise, any person or organization that has documents which may not be disclosed under these regulations and is served with a "subpoena, order, or other judicial process . . . requiring the production of documents or information" is directed to promptly advise the Board's general counsel of such request and must continually "decline to disclose the

---

**2.** The Federal Reserve is charged by Congress to prevent and/or remedy unsafe and unsound banking practices and to ensure economic stability. *See* 12 U.S.C. § 301. Thus, as a condition of membership in the Federal Reserve System, banks are subject to periodic supervisory inspections and examinations by the Federal Reserve. In the course of an annual examination of Bankers Trust, the Federal Reserve did engage in a particularized inquiry with respect to Bankers Trust's derivatives transactions business.

**3.** Rule 45 would presumably require P & G to serve a subpoena on the Federal Reserve in Washington, D.C., directing the Federal Reserve to produce the relevant documents in its possession. The Federal Reserve, if it chose to do so, could then rely on any privileges it may be entitled to and litigate those objections before the district court in which the subpoena was filed.

information...." 12 C.F.R. § 261.14. The Federal Reserve contends, in its *amicus curiae* brief, that the procedures set out in the regulations are the exclusive means of obtaining confidential supervisory information.

In this case, P & G made a discovery request in which it asked for documents of Bankers Trust relating to its leveraged derivative business. Bankers Trust objected to the production of the documents, relying on the regulations summarized above. Unknown to Bankers Trust, P & G also had made a written request to the Federal Reserve Board, pursuant to § 261.13 of the regulations, for the documents in question. The Board took the position that any report or document sent by the Federal Reserve to Bankers Trust as part of the examination process, and any document created by Bankers Trust and sent to the Federal Reserve as part of that process, constituted "confidential supervisory information" which could not be disclosed by Bankers Trust. In a letter to P & G, the Board denied P & G's request for the documents on the ground that P & G had not shown a substantial need for the information that outweighed the need to maintain confidentiality. P & G took that letter to be an exhaustion of administrative remedies, and instead of then proceeding directly against the Federal Reserve through a Rule 45 subpoena or FOIA action, it turned to the district court in which its action against Bankers Trust was pending and sought to compel production of the documents directly from Bankers Trust. P & G served a motion to compel production upon Bankers Trust, and a telephonic conference on the motion was conducted by the district court. P & G advised the Board by letter that this conference would be taking place. The Board, however, did not participate in the conference.

In the conference, the district court made it clear that the Federal Reserve's regulations could in no way interfere with the normal operation of the judicial branch of government. To this end, the court concluded that it was not bound to follow the Board's regulations to the extent that the regulations posed a barrier to the court's ability to control discovery. Thus, because Bankers Trust was in possession of the requested documents, the court concluded that P & G could have discovery of the documents from Bankers Trust. Moreover, the district court did not analyze the documents in question under the bank examination privilege upon which Bankers Trust also relied, because, in the court's opinion, the privilege "doesn't exist." On February 21, 1995, the district court entered an order granting P & G's request to compel production of the documents. It ordered Bankers Trust to produce three categories of documents: 1) all business records or other pre-existing documents which Bankers Trust had submitted to the Board relating to the leveraged derivatives products business; 2) all documents concerning the leveraged derivatives business prepared by Bankers Trust relating to the examination process; and 3) the Federal Reserve's examination reports relating to the leveraged derivatives business. The first two categories were to be turned over to P & G; the last category was to be turned over to the district court for *in camera* inspection.

Bankers Trust now objects to the production of the documents in the latter two categories, and claims that the order is clearly erroneous as a matter of law.[4] First, Bankers Trust contends that the Board's regulations prohibit it, in all events, from disclosing such documents and dictate that P & G seek the documents in question directly from the Federal Reserve. Second, Bankers Trust alleges that the documents are protected under the Federal Reserve's bank examination privilege, a privilege the existence of which the district court refused to recognize. As stated, the Federal Reserve has filed an *amicus curiae* brief in support of the petition for writ of mandamus.[5]

4. Bankers Trust subsequently received the Federal Reserve's permission to produce the pre-existing business records provided by Bankers Trust to the Federal Reserve, i.e., the first category of documents. Bankers Trust, therefore, is not contesting paragraph 1 of the district court's order

which had ordered Bankers Trust to produce such documents.

5. This court also granted the Federal Reserve permission to present a brief argument and to respond to questions at oral argument.

## II.

■ Mandamus review must be confined to matters of usurpation of judicial power or clear abuse of discretion. *Schlagenhauf v. Holder,* 379 U.S. 104, 111, 85 S.Ct. 234, 238–39, 13 L.Ed.2d 152 (1964). Thus, mandamus is not to be used to reverse a decision made by a court in the exercise of legitimate jurisdiction. *In re Aetna Cas. & Sur. Co.,* 919 F.2d 1136, 1140 (6th Cir.1990) (en banc). Moreover, the petitioner has the burden of showing that its right to the issuance of the writ is "clear and undisputable." *Federal Deposit Ins. Corp. v. Ernst & Whinney,* 921 F.2d 83, 86 (6th Cir.1990).

### A.

Bankers Trust notes that the Federal Reserve's regulations provide that the documents in question remain the property of its Board, that a party seeking those documents must request them directly from the Federal Reserve, and that any organization or institution in possession of such documents, if called upon to produce them, shall decline to do so pursuant to the regulations. Bankers Trust contends that because the requested documents constitute or contain confidential supervisory material, P & G must obtain them, if at all, from the Federal Reserve, presumably in a separate action in a district court in Washington, D.C., rather than from Bankers Trust. *See, e.g., Colonial Sav. & Loan Ass'n v. St. Paul Fire & Marine Ins. Co.,* 89 F.R.D. 481 (D. Kan.1980)(Regulations of Federal Home Loan Bank Board held valid even though court recognized some hardship in requiring the relief to be sought in the District of Columbia where jurisdiction could be obtained). Bankers Trust therefore contends that because the discovery order is plainly inconsistent with the governing regulations, it is erroneous as a matter of law warranting mandamus relief.

■ We disagree. As an initial matter, we point out that the discovery order is consistent with the requirements of Rule 34 of the Federal Rules of Civil Procedure. Federal Rule 34(a) states that: "Any party may serve on any other party a request (1) to produce ... any designated documents ...

or to inspect and copy, test, or sample any tangible things ... which are in the *possession, custody or control* of the party upon whom the request is served." Fed.R.Civ.P. 34(a)(emphasis added). Moreover, federal courts have consistently held that documents are deemed to be within the "possession, custody or control" for purposes of Rule 34 if the party has *actual* possession, custody or control, or has the legal right to obtain the documents on demand. *Resolution Trust Corp. v. Deloitte & Touche,* 145 F.R.D. 108, 110 (D. Colo.1992); *Weck v. Cross,* 88 F.R.D. 325, 327 (N.D. Ill.1980). Thus, legal ownership of the document is not determinative. *In re Sunrise Sec. Litig.,* 109 B.R. 658, 661 (E.D.Pa.1990); *Weck,* 88 F.R.D. at 327. It necessarily follows, then, that parties in possession of documents forwarded to them by a federal agency have "possession, custody or control" within the meaning of Rule 34, notwithstanding the fact that the agency by regulation retains ownership and restricts disclosure. *See Resolution Trust Corp.,* 145 F.R.D. at 110 ("Rule 34, which focuses on a party's ability to obtain documents on demand ... is not affected by the [federal agency's] retention of ownership or its *unilaterally* imposed restrictions on disclosure.")(emphasis added). Therefore, because Bankers Trust has possession of the documents in question, and because they appear to be relevant, they are discoverable under the terms of Rule 34 and P & G should be entitled under that Rule to have discovery of those documents.

We are confronted, however, with a situation in which the Board's regulations conflict with the Federal Rules of Civil Procedure with respect to a district court's authority, under the Federal Rules, to control discovery. Rule 34, as enforced through Rule 37, clearly authorizes the district court to order Bankers Trust to turn over those documents in its possession while the Board's regulations specifically prohibit such a disclosure.

■ At bottom, federal regulations should be adhered to and given full force and effect of law whenever possible. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). As long as the federal agency's

regulation is based upon a permissible construction of the enabling statute, the regulation should be enforced. *Id.* The statutory authorities upon which the Federal Reserve relies, however, simply do not give it the power to promulgate regulations in direct contravention of the Federal Rules of Civil Procedure. Section 261 itself identifies as its statutory authority 12 U.S.C. § 248(i) and (k), and 5 U.S.C. § 552. The Federal Reserve also relies upon 5 U.S.C. § 301, and 12 U.S.C. § 1844(b). These statutes are broad, general grants of authority. For example, 12 U.S.C. § 1844(b) authorizes the Board to issue regulations "as may be necessary to enable [the Federal Reserve] to administer and carry out the purposes of this chapter and prevent evasions thereof." 12 U.S.C. § 248(i) provides that the Board "shall perform the duties, functions, or services specified in this chapter, and make all rules and regulations necessary to enable said board effectively to perform the same." 5 U.S.C. § 301, which is the most specific of the statutes, provides that the Federal Reserve may prescribe regulations "for the government of his [sic] department, the conduct of its employees, the distribution and performance of its business, and the custody, use and preservation of its records, papers, and property." Section 301, however, is nothing more than a general housekeeping statute and does not provide "substantive" rules regulating disclosure of government information. *Exxon Shipping Co. v. United States Dep't of Interior,* 34 F.3d 774 (9th Cir.1994). In *Exxon,* five federal agencies sought to prohibit their employees from testifying in depositions, arguing that § 301 authorized it to withhold documents or testimony from federal courts. The court of appeals disagreed. The court noted that according to the legislative history, Congress was concerned that the statute had been "twisted from its original purpose as a 'housekeeping' statute into a claim of authority to keep information from the public." *Id.* at 777 (citation omitted). To correct the situation, Congress amended the statute, adding the following sentence: "This section does not authorize withholding information from the public or limiting the availability of records to the public." 5 U.S.C. § 301. Thus, the court concluded that nothing in the text of the statute empowers a federal agency to withhold documents or testimony from federal courts.

■ We likewise conclude that Congress did not empower the Federal Reserve to prescribe regulations that direct a party to deliberately disobey a court order, subpoena, or other judicial mechanism requiring the production of information. We therefore hold that the language in 12 C.F.R. § 261.14 that requires a party that is served with a subpoena, order, or other judicial process to continually decline to disclose information or testimony exceeds the congressional delegation of authority and cannot be recognized by this court.[6] Such a regulation is plainly inconsistent with Rule 34 and cannot be enforced. To allow a federal regulation issued by an agency to effectively override the application of the Federal Rules of Civil Procedure and, in essence, divest a court of jurisdiction over discovery, the enabling statute must be more specific than a general grant of authority as found here. *Resolution Trust Corp.,* 145 F.R.D. at 111 (holding that the Federal Rules of Civil Procedure cannot be abrogated by agency regulations); *Merchants Nat'l Bank & Trust Co. v. United States,* 41 F.R.D. 266, 268 (D.N.D. 1966)("While the statute gives the Secretary the right to restrict disclosure, judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers."); *Sperandeo v. Milk Drivers & Dairy Employees Local Union No. 537,* 334 F.2d 381, 383 (10th Cir.1964)(holding that federal agencies are bound by discovery rules in the same manner as any other litigant).

Moreover, we find no compelling reason to discard the relatively straightforward discovery methods outlined in the Federal Rules of Civil Procedure simply because the Federal Reserve has attempted to mandate a differ-

---

**6.** We are by no means indicating that the other portions of § 261.14 are likewise unenforceable. To the contrary, we think it advisable if not necessary for a party in litigation that possesses "confidential supervisory information" to inform the Federal Reserve of any requests for production so the Federal Reserve will have notice and the opportunity to intervene and protect any interests, arguments, or concerns it may have.

ent procedure. It seems illogical to this court to require P & G to initiate the much more cumbersome procedure of serving a subpoena on the Federal Reserve in Washington, D.C. simply to enable P & G to obtain the same documents that defendant Bankers Trust possesses. P & G would incur needless delays with such maneuvering and would be forced to litigate any objections to the subpoena before a D.C. district court that may not be as fully informed of the underlying facts and circumstances of the case. Thus, we hold that the district court's discovery order was a legitimate exercise of jurisdiction under Rule 34 and Bankers Trust's first contention of error is without merit.

### B.

Having determined that the federal regulations upon which Bankers Trust relies cannot divest the district court of its authority to apply Rule 34 of the Federal Rules of Civil Procedure, we now turn to Bankers Trust's second issue of whether the district court's treatment of the bank examination privilege constitutes clear error warranting mandamus relief. Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any matter, *not privileged*, which is relevant to the subject matter involved in the pending action." FED. R.CIV.P. 26(b)(1) (emphasis added). Bankers Trust contends that the requested documents are protected from disclosure by what is referred to as the bank examination privilege.

In issuing the discovery order, the district court stated, citing no authority, that the bank examination privilege "doesn't exist." Contrary to the district court's belief, however, the privilege does exist and warrants that the court apply the appropriate test for determining whether the privilege should be honored or overridden. *Schreiber v. Society for Sav. Bancorp, Inc.*, 11 F.3d 217 (D.C.Cir. 1993); *In re Subpoena Served Upon the Comptroller of the Currency, and the Secretary of the Bd. of Governors of the Fed. Reserve Sys. (In re Subpoena)*, 967 F.2d 630 (D.C.Cir.1992); *Delozier v. First Nat'l Bank*, 113 F.R.D. 522 (E.D.Tenn.1986). We hold that this was clear error and a usurpation of judicial power.

■ First and foremost, the bank examination privilege is a qualified rather than absolute privilege which accords agency opinions and recommendations and banks' responses thereto protection from disclosure. *Schreiber*, 11 F.3d at 220. The primary purpose of the privilege is to preserve candor in communications between bankers and examiners, which those parties consider essential to the effective supervision of banking institutions. The privilege is firmly grounded in practical necessity. *In re Subpoena*, 967 F.2d at 633. As the court in *In re Subpoena* explained:

> Bank safety and soundness supervision is an iterative process of comment by the regulators and response by the bank. The success of the supervision therefore depends vitally upon the quality of communications between the regulated banking firm and the bank regulatory agency.... Because bank supervision is relatively informal and more or less continuous, so too must be the flow of communication between the bank and the regulatory agency. Bank management must be open and forthcoming in response to the inquiries of bank examiners, and the examiners must in turn be frank in expressing their concerns about the bank. These conditions simply could not be met as well if communications between the bank and its regulators were not privileged.

*Id.* at 634. Thus, the privilege is designed to promote the effective functioning of an agency by allowing the agency and the regulated banks the opportunity to be forthright in all communications.

■ As stated, however, the privilege is a qualified one. Purely factual material falls outside the privilege, and if relevant, must be produced. *Id.; Schreiber*, 11 F.3d at 220. Likewise, the privilege may be overridden as to its protection of deliberative material if good cause is shown.[7] In this inquiry, the

---

7. The *In re Subpoena* case noted several examples when such a situation may arise, including, for example, exposing "government malfeasance," *In re Franklin Nat'l Bank Sec. Litig.,* 478

court must balance the "competing interests" of the party seeking the documents and those of the government. *At minimum,* the court must consider:

1) the relevance of the evidence sought to be protected;

2) the availability of other evidence;

3) the 'seriousness' of the litigation and the issues involved;

4) the role of the government in the litigation; and

5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Schreiber,* 11 F.3d at 220; *In re Subpoena,* 967 F.2d at 634. While this list does not purport to be an exhaustive list of factors a court might consider, it is at least a floor upon which to balance sufficiently the competing interests of the parties and the federal agency.

We therefore vacate the discovery order inasmuch as the district court failed to weigh whether the privilege should or should not be honored. On remand, the first task of the district court is to determine what documents, or portions thereof, are factual in nature. All factual material, if relevant, must be produced to P & G. The district court must then balance all relevant factors and determine whether the privilege should be honored or overridden as to all other information in the documents in question. We also note that if the privilege is overridden, the district court should consider other possible protective safeguards such as redaction and protective orders to minimize any harm that might otherwise occur from disclosure.

■ As a final matter, we note that the district court on remand must provide the Federal Reserve with notice and allow the Federal Reserve the opportunity to intervene. The bank examination privilege belongs to the Federal Reserve, and therefore, where a claim of the privilege is appropriate, the Federal Reserve must be allowed the opportunity to assert the privilege and the opportunity to defend its assertion.

We grant the petition for writ of mandamus in part, vacate the discovery order, and remand the case to the district court for further proceedings consistent with this opinion.

MERRITT, Chief Judge, concurring.

I concur in full in the court's opinion, but I would point out an additional consideration. Even if Congress had given the Federal Reserve Board specific statutory authority—which it certainly has not—to withhold documents that contain "confidential supervisory information" under whatever circumstances the Board deems appropriate (including a situation when a federal court had issued a Rule 37 discovery order), it is questionable whether such a statute would be constitutional. The Supreme Court has indicated that delegations of rulemaking authority to Article I agencies may implicate separation of powers concerns. *See Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). As the Supreme Court has noted "we have not hesitated to strike down provisions of a law that ... undermine the authority and independence of one or another coordinate Branch." *Mistretta v. United States,* 488 U.S. 361, 382, 109 S.Ct. 647, 660, 102 L.Ed.2d 714 (1989). As Justice Brennan has observed, "A Judiciary free from control by the Executive and Legislature is essential if there is a right to have claims decided by judges who are free from potential domination by other branches of government." *Marathon,* 458 U.S. at 58, 102 S.Ct. at 2865 (plurality opinion) (*quoting United States v. Will,* 449 U.S. 200, 217–18, 101 S.Ct. 471, 482, 66 L.Ed.2d 392 (1980)). If Congress were to limit a federal district judge's authority to order discovery according to the interest of the Federal Reserve, the ability of a federal court to perform its most basic function of deciding "cases and controversies" under Article III of the Constitution would be notably impaired. Courts cannot fairly decide cases if they cannot have access to the information needed for a fair, objective decision. Even when National Security is at stake, federal

F.Supp. 577, 582 (E.D.N.Y.1979), or when the government seeks justice between the litigants.

*Northrop Corp. v. McDonnell Douglas Corp.,* 751 F.2d 395, 407 (D.C.Cir.1984).

courts still review documents to determine whether disclosure is warranted. *See* 18 U.S.C.App. §§ 1–16 (1994) (Classified Information Procedures Act).