van Gestel, Allan, J.
This matter is before the Court on two, or possibly three, motions: Motion of Defendant BDO Seidman LLP to Deposit OCC Report Pending Ruling on (1) BDO’s Motion to Use OCC Report Produced By Plaintiff Bank of America and (2) Bank of America’s Motion to Compel Return of OCC Report, Paper #35; Defendant BDO Seidman LLP’s Motion to Permit the Use of the OCC Report and to Compel Production of Documents Concerning the OCC’s Examination of Plaintiff s Loans to Cobblestone Corporation of Northern New England, Paper #36; and, in the first motion there is reference to “Bank of America’s Motion to Compel Return of OCC Report,” but no such motion appears on the court docket. Each of the foregoing relate to the same legal and procedural issues and, therefore, they will be discussed herein as one.
BACKGROUND
The predecessor to the plaintiff, Bank of America, N.A. (the “Bank”), in 1992 began a lending arrangement with the defendant Cobblestone Corporation of Northern New England, Inc. (“Cobblestone”). Over the years, the Bank repeatedly expanded its commitment to Cobblestone such that by 2003 the loan had reached $20.5 million. In December 2004, the Bank notified Cobblestone that the Bank would not renew *361 the line of credit on the same terms that had prevailed for the previous decade.
Cobblestone and the Bank were unable to reach agreement on the terms of a new credit agreement. Consequently, the credit line was converted to an arrangement under which Cobblestone was required to pay the Bank $20.5 million, plus interest, in monthly installments over the following 24 months. Cobblestone was unable to keep up its payments or obtain credit elsewhere. The Bank then accelerated the amount due and this suit followed.
The Bank has sued Cobblestone, as well as its corporate guarantors and officers, alleging fraud, breach of contract and violations of G.L.c. 93A.
The Bank also has sued BDO Seidman, LLP (“BDO”), Cobblestone’s auditors, at least for the 2003 and 2004 audited financial statements. The allegations against BDO are that it negligently conducted its audits, thereby negligently misrepresenting the financial condition of Cobblestone, particularly Cobblestone’s equipment lease and loan receivables.
All defendants assert that the Bank had actual knowledge of the state of Cobblestone’s receivables, but nevertheless elected to increase the line of credit. They also contend that the Bank had knowledge of other risks in the lending relationship, but routinely elected to accept — and in some instances, disregard— those risks.
The Bank is regulated by the Office of the Comptroller of the Currency (“OCC”). In 2003, the OCC conducted a review of the Bank’s loans to Cobblestone. The OCC issued to the Bank a report dated October 2003 (the “OCC Report”). The OCC Report, apparently, was critical of the Bank’s loan transactions with Cobblestone.[2]
The defendants claim — and to this Court it appears — that the OCC Report is relevant to their defenses to the Bank’s claims.
In the course of pre-trial discovery in this case, the Bank, in response to BDO’s requests for production of documents, produced at least five copies of the OCC Report. The Court has been advised that the OCC Report is just two pages long and contains nothing on it to indicate what it was or where it came from. Nevertheless, in producing the OCC Report the Bank designated it as “Confidential” pursuant to a Court-approved Stipulated Protective Order governing this case. All parties have treated the OCC Report in a manner consistent with the Protective Order.
Starting a few months ago, the Bank requested that BDO return the OCC Report. Apparently, the Bank initially cited to 12 C.F.R. §18.9, which provides: “Except as permitted under part 4 of this chapter, a national bank may not disclose any report of examination or report of supervisory activity, or any portion thereof, prepared by the OCC.”
Also, by letter dated June 25, 2007, the Bank’s counsel wrote to BDO’s counsel: “Pursuant to 12 C.F.R. §4.37, we are obligated to inform you that as an entity in possession of non-public OCC information, you may not disclose such information in any manner without first seeking the approval of the OCC or as ordered by a Federal District Court.”
The OCC, by its communications with the Bank, seems fully aware of the situation. This becomes clear in a July 16, 2007, letter from the OCC to in-house counsel for the Bank, relating to the issue. Among other things, the OCC’s letter stated:
I understand that the document [the OCC Report] was provided to [BDO] in the course of discovery despite the Bank’s efforts to properly identify documents prepared by the OCC in order to comply with the regulations prohibiting disclosure of nonpublic OCC information. Nevertheless, we require that every effort be taken to recover that document, and any other non-public OCC information, that has been provided to [BDO] contrary to the OCC’s regulations.
[BDO], of course, may file a request for permission to use non-public information in the litigation described above. However, the OCC will consider that request only after [BDO] has certified that it is not in possession of non-public OCC information contrary to OCC regulations. The regulations make clear that persons who obtain non-public OCC information and retain possession of it in violation of the OCC’s regulations may be subject to the criminal penalties in 18 U.S.C. §641. 12 C.F.R. §4.37(b)(l)(ii).
Please keep me advised of your efforts to obtain the return of the non-public OCC information that is currently in [BDO’s] possession without OCC authorization.
The Court has no reason to believe that the Bank, in any way, has failed to keep the OCC “advised of [its] efforts to obtain the return of the non-public OCC information that is currently in [BDO’s] possession without OCC authorization,” perhaps even including the exchange of the present motions and the briefing thereon. The OCC, however, in the four months that have expired since its July 16, 2007, letter to the Bank quoted above, has not been in contact with BDO or any of the other defendants, nor has it sought to intervene, even on a limited basis to protect the OCC Report, before this Court.
DISCUSSION
BDO asserts that both due process and the discovery rights granted by the Massachusetts Rules of Civil Procedure allow BDO to retain and use the OCC Report in this action. This Court agrees. Principally, BDO relies upon two cases: In re Bankers Trust Co., 61 F.3d 465 (6th Cir. 1995), and The Merchants Bank v. Vescio, 205 B.R. 37 (D.Vt. 1997).
*362 In Merchants Bank, the Vermont Federal Court, on an appeal of an order from the Bankruptcy Court for that District, dealt with a situation with many similarities to that faced here. In addressing an argument there to the effect that federal regulations prohibited the disclosure of confidential information owned by the FDIC and the Federal Reserve — which regulations are similar to those pressed by the Bank in connection with the OCC Report — and required a third party to file applications with the banking agencies directly, and while warning of criminal sanctions for disclosing such information, the Vermont Court said:
The regulations in question conflict with Rule 34 of the Federal Rules of Civil Procedure, which states that in pertinent part: “Any party may serve on any other party a request (1) to produce . . . any designated documents . . . which are in the possession, custody or control of the party upon whom the request is served.” The Bank relies on two United States district court cases which read the FDIC and Federal Reserve regulations as excepting information deemed exempt from Rule 34 . . . The Court rejects these cases, and instead follows a more persuasive opinion of the Sixth Circuit Court of Appeals.
Id., 205 B.R. at 41.
The Merchants Bank court then observed that the Sixth Circuit in In re Bankers Trust Co., 61 F.3d 465 (6th Cir 1995), held that the Federal Rules of Civil Procedure necessarily prevail over mere “housekeeping” rules such as federal regulations. Id. Quoting from Bankers Trust, the Merchants Bank court said:
“We . . . conclude that Congress did not empower the Federal Reserve to prescribe regulations that direct a party to deliberately disobey a court order, subpoena, or the judicial mechanism requiring the production of information. We therefore hold the language in 12 C.F.R. §261.14 that requires a parly that is served with a subpoena, order, or other judicial process to continually decline to disclose information or testimony exceeds the congressional delegation of authority and cannot be recognized by this court. Such a regulation is plainly inconsistent and cannot be enforced. To allow a federal regulation issued by an agency to effectively override the application of the Federal Rules of Civil Procedure, and, in essence, divest a court of jurisdiction over discovery, the enabling statute must be more specific than a general grant of authority as found [in the statute enabling the Federal Reserve to promulgate regulations].” 61 F.3d at 470.
Id,, 205 B.R. at 41.
Both Merchants Bank and Bankers Trustwere cases by Federal courts addressing Federal regulations and their interplay with Federal Rules of Civil Procedure. Here, it is a state court addressing such Federal regulations and their interplay with Massachusetts Rules of Civil Procedure. In this Court’s opinion, that does not change the law on the basic issue of whether discovery rules trump OCC housekeeping regulations. It may, however, affect how this matter plays out.
Neither Merchants Bank nor Bankers Trust compelled a return of the challenged documents to the Federal agency involved, nor did they compel a ruling thereon by a Federal District Court. This Court rules here in the same way. However, before authorizing the use by BDO, or any of the other defendants, of the OCC Report or related information, this Court will provide a window of opportunity for the OCC, if it chooses, to appear before this Court and make its case why a different conclusion is warranted.
In the meantime, counsel for BDO is directed to keep confidentially the OCC Report and other related OCC materials.
ORDER
For the foregoing reasons, the Motion of Defendant BDO Seidman LLP to Deposit OCC Report Pending Ruling on (1) BDO’s Motion to Use OCC Report Produced By Plaintiff Bank of America and (2) Bank of America’s Motion to Compel Return of OCC Report, Paper #35, is DENIED; the Defendant BDO Seidman LLP’s Motion to Permit the Use of the OCC Report and to Compel Production of Documents Concerning the OCC’s Examination of Plaintiffs Loans to Cobblestone Corporation of Northern New England, Paper #36, is ALLOWED; and the Bank of America’s Motion to Compel Return of OCC Report, if filed and docketed, is DENIED.
Counsel for BDO shall retain confidentially in his custody the OCC Report and related materials until December 17, 2007, during which time OCC may, if it chooses, intervene in this case for the limited purpose of seeking different relief regarding the OCC Report and related materials. If, however, no such appearance is filed by the OCC that date, then BDO and the other defendants are free to use the OCC Report and any related materials in any appropriate way, consistent with the Massachusetts Rules of Civil Procedure. If there is an OCC appearance, however, the materials in issue must remain held confidentially until the matter relating to the OCC Report is otherwise resolved.
Counsel for the Bank is directed to provide to counsel for the OCC a copy of this decision.

For reasons recited below, the Court has not seen the OCC Report.