[Cite as *Jacobs v. Equity Trust Co.*, 2021-Ohio-4349.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

WILLIE JACOBS, et al.

    Appellees

    v.

EQUITY TRUST COMPANY, et al.

    Appellants

C.A. No.    20CA011701

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    CV 13-182283

DECISION AND JOURNAL ENTRY

Dated: December 13, 2021

HENSAL, Presiding Judge.

{¶1} Equity Trust Company, Equity Administrative Services, Inc., Jeffrey Desich, and Richard Desich, Sr. (collectively, "Equity Trust"[1]) appeal an interlocutory order from the Lorain County Court of Common Pleas, ordering the production of certain documents to Willie Jacobs, Elias Zachos, and Gerald Watts (collectively, "Plaintiffs"). This Court reverses and remands for further proceedings consistent with this decision.

I.

{¶2} This is the second time Equity Trust has appealed an order from the trial court that directs Equity Trust to produce documents to Plaintiffs that Equity Trust claims are privileged. In *Jacobs v. Equity Trust Co.*, 9th Dist. Lorain No. 20CA011621, 2020-Ohio-6882 ("*Jacobs I*"), this Court explained that Plaintiffs filed a putative class action lawsuit against

---

[1] This Court will also use "Equity Trust" to refer generally to corporate employees and/or executives of Equity Trust Company.

Equity Trust, asserting claims related to investment losses in their self-directed individual retirement accounts. *Id.* at ¶ 2. Relevant to *Jacobs I*, one of those claims involved Equity Trust's custodial account agreement. *Id.* Equity Trust revised that agreement in 2011, and Plaintiffs sought discovery of material related to those revisions. *Id.*

{¶3} Equity Trust produced over 6,000 documents but withheld 1,260 documents based on privilege. *Id.* at ¶ 3. The parties eventually narrowed the number of disputed documents to 225, and Equity Trust submitted 50 of the 225 documents to the trial court for an in camera inspection. *Id.* at ¶ 3-4. Equity Trust organized those 50 documents in a binder with 40 tabbed sections, and the trial court ultimately ordered Equity Trust to produce the documents contained within 31 of the 40 tabs. *Id.* at ¶ 4. Equity Trust appealed, arguing that those documents were protected by the attorney-client privilege. *Id.* at ¶ 6. This Court agreed, reversing the decision of the trial court. *Id.* at ¶ 51.

{¶4} While *Jacobs I* remained pending, Equity Trust submitted a second set of 66 documents for in camera review, along with two supporting affidavits. Equity Trust organized those documents in a binder with Tabs A-WW, and Exhibits 1-66 under those Tabs.[2] Thereafter, the trial court ordered the production of most of those documents.

{¶5} According to the briefs on appeal, the parties conferred and narrowed the disputed documents down to 18 documents: Tabs A (Exhibits 1-2), B (Exhibits 3-4), D (Exhibit 6), H, K, V, W, X, Z, II, JJ, KK, LL, MM, NN, and WW. Equity Trust argues that the document under Tab WW is protected from disclosure by the bank examination privilege, and that the remaining

---

[2] When a Tab contains a single Exhibit, this Court will refer to the document by its Tab only.

17 documents are protected by the attorney-client privilege. Equity Trust raises two assignments of error for this Court's review.

## II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED BY COMPELLING EQUITY TRUST TO PRODUCE PRIVILEGED DRAFTS AND COMMUNICATIONS.

{¶6} In its first assignment of error, Equity Trust argues that 17 of the 18 documents in dispute are protected from disclosure by the attorney-client privilege, and that the trial court erred by ordering it to produce those documents to Plaintiffs. This Court agrees.

{¶7} "[W]hen the information sought in discovery is alleged to be confidential and privileged, it is a question of law that is reviewed de novo." *Jacobs I*, 2020-Ohio-6882, at ¶ 7. "A de novo review requires an independent review of the trial court's decision without any deference to the trial court's determination." *Id.*, quoting *State v. Consilio*, 9th Dist. Summit No. 22761, 2006-Ohio-649, ¶ 4. This Court set forth the law specific to the attorney-client privilege in *Jacobs I* and will apply that same law here. *Id.* at ¶ 8-14.

{¶8} Equity Trust's argument regarding the attorney-client privilege is divided into two primary categories: (1) legal advice it sought and received from outside counsel; and (2) legal advice it sought and received from in-house counsel. The outside-counsel category is divided into six subcategories and relates to Tabs A (Exhibits 1-2), B (Exhibits 3-4), D (Exhibit 6), H, K, V, W, X, and Z. Equity Trust asserts that the documents relative to the outside-counsel category relate to legal advice it sought and received regarding: (1) draft custodial deposit agreements (Tabs H and K); (2) draft account application forms (Tab A, Exhibits 1-2 and Tab B, Exhibits 3-4); (3) drafts of a letter of intent (Tab D, Exhibit 6); (4) a draft contract (Tab Z); (5) draft responses to SEC inquiries and subpoenas (Tabs V and W); and (6) draft responses to customer

complaints made to the Better Business Bureau (Tab X). The in-house counsel category is divided into two subcategories, and relates to Tabs II, JJ, KK, LL, MM, and NN. Equity Trust asserts that the documents relative to the in-house counsel category relate to legal advice it sought and received regarding: (1) customer account applications (Tabs II and JJ); and (2) draft responses to customer inquiries (Tabs KK-NN).

{¶9} Equity Trust supports its arguments regarding the attorney-client privilege with citations to the 2019 affidavit of Michael Dea, its then president and former chief financial officer. It asserts that Mr. Dea's affidavit details how Equity Trust sought and received legal advice regarding the documents it claims are privileged. We will address each category and related documents in turn, beginning with Equity Trust's arguments relative to the legal advice it sought and received from outside counsel. We will address each document in the order that Equity Trust has raised it in its merit brief.

{¶10} *Tabs H and K.* First, Equity Trust argues that it hired the law firm of BakerHostetler to provide legal advice regarding draft custodial deposit agreements with two banks: Liberty Bank, N.A. and CIT Bank. It argues that Tabs H and K reflect its communications with counsel at BakerHostetler about those drafts, as well as proposed revisions. Equity Trust points out that the trial court concluded that some of these drafts were privileged, yet others were not. More specifically, it points to the fact that the trial court concluded that one version of the draft custodial deposit agreement was privileged when exchanged internally among Equity Trust employees (Tab I), but ordered Equity Trust to produce nearly the exact same document when it was circulated just minutes before (Tab H). It asserts that there was no reason to treat these documents differently, and that the drafts exchanged between Equity Trust and outside counsel are privileged because Equity Trust sought legal counsel regarding those

drafts, and the drafts reflect counsel's advice. It also asserts that these documents do not lose privilege merely because they are also exchanged internally.

{¶11} In support of its argument, Equity Trust cites Mr. Dea's affidavit wherein he averred that Equity Trust hired BakerHostetler to provide legal advice regarding the revisions to custodial deposit agreements. He averred that he exchanged emails and proposed drafts with counsel at BakerHostetler regarding those revisions. He averred that Tab H is a document that is labeled as a BakerHostetler draft and reflects counsel's legal advice regarding revisions to the custodial deposit agreement. He also averred that Tab K is a document that counsel at BakerHostetler emailed to him that reflects counsel's edits to the custodial deposit agreement.

{¶12} This Court's review of Tabs H and K indicates that, consistent with Mr. Dea's affidavit and Equity Trust's assertions on appeal, these documents relate to a draft custodial deposit agreement on and about which Equity Trust sought and received counsel's legal advice.

{¶13} *Tabs A (Exhibits 1-2) and B (Exhibits 3-4).* Second, Equity Trust argues that it hired BakerHostetler to provide legal advice regarding Equity Trust's 2009 acquisition of Sterling Trust Company ("Sterling"), including the preparation and review of draft acquisition-related documents. It argues that Tabs A (Exhibits 1-2) and B (Exhibits 3-4) reflect its communications with its counsel at BakerHostetler regarding proposed drafts of account application forms. It asserts that Tab B (Exhibits 3-4) reflects draft account application forms that counsel at BakerHostetler emailed to Equity Trust, and counsel's advice about revisions to those forms. It asserts that Tab A (Exhibits 1-2) reflects the attachments to an email Equity Trust sent back to counsel with additional questions about those forms, specifically seeking legal advice. Equity Trust concludes that these documents are privileged because they were drafts sent to counsel so that counsel could review them and provide legal advice about their contents.

{¶14} In support of its argument, Equity Trust cites Mr. Dea's affidavit wherein he averred that Equity Trust hired BakerHostetler to provide legal advice regarding its acquisition of Sterling, including the drafting and review of acquisition-related documents. He averred that he exchanged emails with counsel at BakerHostetler about those drafts, and that the purpose of those communications was to seek counsel's legal advice. Mr. Dea averred that Tab A (Exhibits 1-2) contains draft account forms that were prepared and sent to counsel for the purpose of obtaining counsel's legal advice on topics including account opening and account maintenance. He also averred that Tab B (Exhibits 3-4) contains documents attached to an email sent from counsel to him, reflecting counsel's legal advice in the form of edits to Sterling's account application.

{¶15} This Court's review of Tabs A (Exhibits 1-2) and B (Exhibits 3-4) indicates that, consistent with Mr. Dea's affidavit and Equity Trust's assertions on appeal, these documents relate to draft account forms exchanged between Equity Trust and counsel at BakerHostetler on and about which Equity Trust sought and received counsel's legal advice.

{¶16} *Tab D, Exhibit 6.* Third, Equity Trust argues that it hired BakerHostetler to provide legal advice regarding Equity Trust's possible contract with Liberty Bank. It argues that Tab D reflects an email from counsel at BakerHostetler with two attachments: a draft letter of intent with the counsel's redlined revisions (Exhibit 7), and the same draft letter of intent with counsel's redlined revisions accepted (Exhibit 6). The trial court ordered Equity Trust to produce the latter (Exhibit 6) but concluded that the redlined version (Exhibit 7) was privileged. Equity Trust argues that the draft with the redlined revisions accepted – like the redlined version – is privileged because it reflects counsel's advice regarding its proposed contract with Liberty

Bank and was exchanged between Equity Trust and counsel at BakerHostetler for the purpose of obtaining counsel's legal advice.

{¶17} In support of its argument, Equity Trust cites Mr. Dea's affidavit wherein he averred that Equity Trust hired BakerHostetler to provide legal advice regarding its possible transaction with Liberty Bank. He averred that he worked with counsel at BakerHostetler to prepare and review draft letters of intent and related documents. Mr. Dea averred that Exhibit 6 contains an attachment to an email sent from counsel at BakerHostetler to Equity Trust that reflects counsel's edits to a draft letter of intent.

{¶18} This Court's review of Tab D, Exhibit 6 indicates that, consistent with Mr. Dea's affidavit and Equity Trust's assertions on appeal, this document is a draft letter of intent sent by counsel at BakerHostetler to Equity Trust, which incorporates counsel's edits.

{¶19} *Tab Z.* Fourth, Equity Trust asserts that it hired BakerHostetler to provide legal advice regarding an insured deposit account agreement between U.S. Bank, N.A. and Equity Trust. As part of that process, Equity Trust worked with counsel at BakerHostetler to prepare and review a draft of that agreement. Equity Trust asserts that Tab Z reflects a draft insured deposit account agreement sent from counsel at BakerHostetler to Equity Trust, which includes counsel's legal advice and proposed changes to the draft.

{¶20} In support of its argument, Equity Trust cites Mr. Dea's affidavit wherein he averred that Equity Trust hired BakerHostetler to provide legal advice regarding the insured deposit account agreement. He averred that he worked with counsel to prepare and review that agreement, and that Tab Z contains an attachment to an email sent by counsel to him that reflects counsel's edits to that agreement.

{¶21} This Court's review of Tab Z indicates that, consistent with Mr. Dea's affidavit and Equity Trust's assertions on appeal, this document is a draft insured deposit account agreement with revisions on it sent from counsel at BakerHostetler to Equity Trust.

{¶22} *Tabs V and W.* Fifth, Equity Trust argues that it hired the law firm of Ulmer & Berne LLP ("Ulmer") to provide legal advice regarding an inquiry from the SEC requesting various information from Equity Trust, as well as a subpoena it received from the SEC. We will address each matter in turn.

{¶23} Regarding the SEC inquiry, Equity Trust asserts that Tab V reflects a memorandum that an Equity Trust employee prepared in response to requests from the Ulmer legal team. According to Equity Trust, this memorandum was prepared for the purpose of aiding counsel at Ulmer in their provision of legal advice, and identifying items on which Equity Trust required legal advice in relation to the SEC inquiry. Equity Trust asserts that this memorandum was sent directly to counsel at Ulmer.

{¶24} In support of its argument, Equity Trust cites Mr. Dea's affidavit wherein he averred that Tab V contains an attachment to an email, which he was copied on, from an Equity Trust employee to counsel at Ulmer. He averred that Ulmer advised Equity Trust regarding responses to SEC inquiries and that, during that process, he instructed an Equity Trust employee to draft the memorandum attached to the email for the purpose of seeking counsel's legal advice on this issue.

{¶25} Regarding the SEC subpoena, Equity Trust asserts that it instructed counsel at Ulmer to draft a response letter to the SEC subpoena, and that Equity Trust and counsel exchanged drafts of that letter. Equity Trust asserts that Tab W is one of those draft letters.

{¶26} In support of its argument, Equity Trust cites Mr. Dea's affidavit wherein he averred that Tab W contains a draft response letter to the SEC subpoena, which Equity Trust instructed counsel at Ulmer to prepare. He averred that this draft letter contains Equity Trust's comments, which were made for the purpose of soliciting further legal advice.

{¶27} This Court's review of Tab V indicates that, consistent with Mr. Dea's affidavit and Equity Trust's assertions on appeal, this document is a memorandum drafted and sent to counsel at Ulmer regarding responses to the SEC inquiry. This Court's review of Tab W indicates that, consistent with Mr. Dea's affidavit and Equity Trust's assertions on appeal, this document is a draft response letter to the SEC subpoena prepared by counsel at Ulmer, which Equity Trust commented on and sent back to counsel.

{¶28} *Tab X.* Sixth, Equity Trust argues that it hired Ulmer to provide legal advice regarding how it should respond to customer complaints made to the Better Business Bureau. Equity Trust asserts that Tab X reflects a document containing draft responses to customer complaints that an Equity Trust employee prepared and sent to counsel at Ulmer, seeking legal advice in that regard.

{¶29} In support of its argument, Equity Trust cites Mr. Dea's affidavit wherein he averred that Equity Trust hired Ulmer to provide legal advice regarding its responses to customer complaints filed with the Better Business Bureau. He averred that Tab X contains draft responses to those complaints, which Equity Trust sent to counsel at Ulmer for the purpose of receiving legal advice regarding those responses.

{¶30} This Court's review of Tab X indicates that, consistent with Mr. Dea's affidavit and Equity Trust's assertions on appeal, this document contains draft responses to customer

complaints that Equity Trust prepared and sent to counsel at Ulmer, seeking counsel's advice regarding those draft responses.

{¶31} Having summarized Equity Trust's arguments relative to the legal advice it sought and received from outside counsel, we now turn to Equity Trust's arguments relative to the legal advice it sought and received from in-house counsel.

{¶32} *Tabs II and JJ.* First, Equity Trust argues that it sought and received legal advice from its former in-house counsel regarding its customer-facing contracts, including draft customer account applications and draft customer account disclosure forms. It asserts that Tabs II and JJ reflect its former in-house counsel's legal advice regarding the contents of those documents.

{¶33} In support of its argument, Equity Trust cites Mr. Dea's affidavit wherein he averred that he instructed in-house counsel to render legal advice regarding the drafting of these documents, and that Tab II and JJ reflect in-house counsel's comments and edits made in response to his request for legal advice.

{¶34} This Court's review of Tabs II and JJ indicates that, consistent with Mr. Dea's affidavit and Equity Trust's assertions on appeal, Tab II is a draft customer account application that contains in-house counsel's comments, and Tab JJ is a draft customer account disclosure that contains in-house counsel's edits and comments.

{¶35} *Tabs KK through NN.* Second, Equity Trust argues that it sought and received legal advice from its former in-house counsel regarding draft responses to customer inquiries. It asserts that Tabs KK through NN reflect its former counsel's edits to draft responses to customer inquiries.

{¶36} In support of its argument, Equity Trust cites Mr. Dea's affidavit wherein Mr. Dea averred that part of his responsibilities included reviewing draft responses to customer inquiries. He averred that Tabs KK through NN contain in-house counsel's legal opinions and advice regarding Equity Trust's draft responses to customer inquiries.

{¶37} This Court's review of Tabs KK, LL, MM, and NN indicates that, consistent with Mr. Dea's affidavit and Equity Trust's assertions on appeal, these documents are draft responses to customer inquiries, which contain Equity Trust's in-house counsel's edits.

{¶38} Having summarized Equity Trust's arguments, we now turn to Plaintiffs' position on appeal. Plaintiffs assert that Equity Trust has not met its burden of establishing that the disputed documents are privileged. They assert that all of the disputed documents are draft versions of documents covering a variety of topics relevant to their claims. Plaintiffs argue that draft versions of documents do not fall within the attorney-client privilege simply because an attorney reviews them. Indeed, they argue, when the dominant purpose is business rather than legal advice, production is required. Plaintiffs argue that, because the documents in this case address business concerns, not legal advice, the attorney-client privilege is improper. They also argue that Mr. Dea's affidavit contains boilerplate language, and that Equity Trust's position on some of these documents is inconsistent with the fact that it has disclosed other, similar documents.

{¶39} This Court has reviewed each of the disputed documents, as well as Mr. Dea's affidavit. Initially, we reject Plaintiffs' argument that Mr. Dea's affidavit contains boilerplate language. As set forth above, Mr. Dea's affidavit contains averments specific to each disputed document. We likewise reject Plaintiffs' argument that Equity Trust's assertion of privilege is inconsistent with the fact that it has disclosed other, similar documents. Applying the law set

forth in *Jacobs I*, this Court concludes that each document is protected from disclosure by the attorney-client privilege. The documents reflect drafts that were exchanged between Equity Trust and legal counsel and/or among Equity Trust employees for the predominate purpose of seeking and/or relaying legal advice. *See Jacobs*, 2020-Ohio-6682, at ¶ 11-14. We, therefore, conclude that the trial court erred by ordering the production of the following documents: Tabs A (Exhibits 1-2), B (Exhibits 3-4), D (Exhibit 6), H, K, V, W, X, Z, II, JJ, KK, LL, MM, and NN. Equity Trust's first assignment of error is sustained.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY ORDERING PRODUCTION OF A DOCUMENT PROTECTED BY THE BANK EXAMINATION PRIVILEGE.

{¶40} In its second assignment of error, Equity Trust argues that the trial court erred by ordering it to produce a document that is protected by the bank examination privilege. For the reasons that follow, we sustain Equity Trust's second assignment of error.

{¶41} "The bank examination privilege belongs to the [federal regulator], and therefore, where a claim of the privilege is appropriate, the [federal regulator] must be allowed the opportunity to assert the privilege and the opportunity to defend its assertion." *In re Bankers Tr. Co.*, 61 F.3d 465, 472 (6th Cir.1995). Here, Equity Trust asserts that it advised Plaintiffs that Tab WW implicates the bank examination privilege because it is a draft response to a request from the Board of Governors of the Federal Reserve System (the "Board"). Equity Trust argues that Plaintiffs never notified the Board that they were seeking production of a document implicating the bank examination privilege and, therefore, the Board never intervened to assert or waive the privilege. As a result, it argues, the dispute over the document was not ripe when it reached the trial court. Equity Trust asserts that the trial court's order gives no indication that it considered this issue. It concludes that, because both Plaintiffs and the trial court disregarded the

steps necessary to address and potentially override the bank examination privilege, this Court should reverse.

{¶42} In support of its argument, Equity Trust cites the 2019 affidavit of Jeffrey Desich, the Vice Chair of Equity Trust. Mr. Desich averred that Tab WW contains a draft response to the Board's request for additional information in connection with the Board's examination of a proposed transaction between Equity Trust and a bank.

{¶43} In response, Plaintiffs argue that the bank examination privilege does not apply to factual material. They assert that the disputed document contains only factual material and, therefore, there was no need to notify the Board.

{¶44} This Court's review of the briefing below indicates that Equity Trust argued that Tab WW implicates the bank examination privilege, which belongs to a federal regulator. Equity Trust argued that Plaintiffs had not notified the appropriate regulator and, therefore, that the issue was not ripe for the trial court's review.

{¶45} In its 5-sentence order, the trial court summarily concluded that certain documents were discoverable, including Tab WW. It did not provide any analysis, and there is no indication that the trial court considered Equity Trust's argument regarding the bank examination privilege. That puts this Court in the position of having to consider this issue for the first time on appeal. That is not the function of a reviewing court. *Rubber City Arches Graham, L.L.C. v. Joe Sharma Properties, L.L.C.*, 9th Dist. Summit No. 26557, 2013-Ohio-1773, ¶ 8 ("This Court remains a reviewing court. As such, this Court will not consider issues in the first instance."). Accordingly, we reverse and remand the matter for the trial court to consider Equity Trust's argument relative to the bank examination privilege. *See id.* at ¶ 12. Equity Trust's second assignment of error is sustained on that basis.

III.

{¶46} Equity Trust's assignments of error are sustained. The judgment of the Lorain County Court of Common Pleas is reversed, and the cause is remanded for further proceedings consistent with this decision.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

JENNIFER HENSAL
FOR THE COURT

CARR, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

THOMAS R. LUCCHESI, BRETT A. WALL, JAMES H. ROLLINSON, and DAVID F. PROANO. Attorneys at Law, for Appellants.

DENNIS R. LANDSDOWNE, STUART E. SCOTT, NICHOLAS A. DICELLO, and KEVIN C. HULICK, Attorneys at Law, for Appellees.